# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4131

_____

United States of America,     *
                                  *

        Plaintiff - Appellee     *

                                   *    Appeal from the United States

      v.                              *    District Court for the

                                   *    Northern District of Iowa.

Lavoris Sandifer, also known as Terrell,    *

also known as Darrell Diggs,         *

                                   *

        Defendant - Appellant.     *

_____

Submitted: May 11, 1999
Filed: August 20, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Lavoris Sandifer appeals his conviction and sentence on a single count of possession of crack with the intent to manufacture and distribute in violation of 21 U.S.C. § 841(a)(1) (1994). Sandifer argues that 1) the district court[1] erred in sentencing by admitting into evidence materially false victim impact statements, and 2)

_____

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

the evidence was insufficient to support the conviction.  We affirm.

On January 3, 1996, pursuant to a warrant, drug task force officers entered a residence at 200 Courtland Street, Waterloo, Iowa.  Inside were Sandifer, Mambu Fulgham, Steve Williams, and Robert Gant.  Sandifer, the only one of the four who was in the kitchen, attempted to flee, but was apprehended.  Sandifer had nearly $850 in cash on him, and more than 100 grams of crack was cooking on the stove in a Pyrex pitcher.  In the kitchen, officers also found 28.45 grams of cocaine and an electronic scale.  Plastic sandwich bags with the corners torn (which are commonly used to distribute crack), and other drug paraphernalia were in the house.

At trial, the officers testified about the search of the house.  Fulgham testified that he had repeatedly purchased crack from Sandifer and that on four occasions, Sandifer had "fronted" him the crack, which he sold and then paid Sandifer.  Fulgham further testified that he met Sandifer on January 3 for the purpose of obtaining crack, that Sandifer was to "cook up" the crack at the residence, and that he saw Sandifer doing so.  Keith Hudson testified, pursuant to Federal Rule of Evidence 404(b), that he had seen Sandifer "cook up" crack and that he purchased crack from Sandifer under similar circumstances in 1993 and 1994.

At sentencing, the court determined an offense level of 36 and a criminal history category of I, resulting in a sentence range of 188 to 235 months.  See USSG ch. 5, pt. A (sentencing table).  Over Sandifer's relevancy objection, the court admitted five neighborhood victim impact statements.  The victim impact statements contain statements such as: "Peoples [sic] homes have been shot at.  I have been shot at three times and my home has been shot at two times"; "I have 5 bullet holes from a 380 semi-automatic in my house . . . [and] pellets from a shot gun in my house walls [from] an attempt to kill me because of my involvement in ridding the sale of drugs in our neighborhood"; "Children can not go out of sight"; and "Lots of condemned houses [and] broken windows since the problem started."

The court imposed a sentence of 204 months, which is in the lower half of the sentence range. The court enumerated the factors weighing in favor of imposing the minimum sentence in the range: 1) the relatively harsh sentences for crack; 2) the fact that this was Sandifer's first drug felony conviction; and 3) Sandifer's troubled childhood and psychological background. It then stated, "[T]he reason I haven't gone all the way to the bottom [of the sentencing range] and [instead] have imposed a sentence . . . somewhat below the midpoint . . . is the fact that I . . . gave Mr. Sandifer a pretty good break in the [drug] quantity determination."[2]

As for the victim impact statements, the court stated:

As far as the [victim] impact statements are concerned, I appreciate receiving those . . . I appreciate the fact that the community is concerned, and I think it's also important that the community be involved in cleaning up their neighborhood so I think it's important that they take action of this kind.

Having said that, however, I don't know that the statements say a lot that we don't already know. . . .I'm aware of the fact that drug dealing has an impact upon the neighborhood. I'm aware of the fact that drug dealing has an impact upon property values. I'm aware of the fact that there's an associated increase in violence and other forms of criminal activity, whether it be burglaries, thefts, muggings, [sic] assaults, that go along with drug dealing, and so to that extent, while the victim impact statements are important, I don't know that they tell us a lot that we don't already know about what happens with drug dealers and they tell us or maybe confirm what we already knew, which is one of the reasons drug dealing is illegal, that it does impact not only the lives of the drug dealers and their customers but the lives of the members of the neighborhood, so to that extent, while they are I think important and they're helpful and

---

[2]There was evidence showing that Sandifer had been involved with over 500 grams of crack from 1993 through 1996. The district judge discounted some of the evidence, which yielded a lower offense level.

they're useful, they just confirm I think what most of us already knew already [sic] about the impact that drug dealing has upon a neighborhood and a community.

## I.

Sandifer claims the victim impact statements were false and that the district court's reliance upon them violated his Fifth Amendment due process right. When the defendant claims false information has been used in the sentencing calculus, "A due process violation is established only if the defendant shows that the district court relied on materially false information and that the information is demonstrably the basis for the challenged sentence." See United States v. Carr, 66 F.3d 981, 983 (8th Cir. 1995); see also United States v. Wright, 799 F.2d 423, 426 (8th Cir. 1986) (sentences based upon material misinformation or erroneous assumptions violate due process).

Sandifer has failed to establish his due process claim. Before the district court, Sandifer objected on the grounds of relevance, but made no objection that the information in the victim impact statements was materially false. We, therefore, review for plain error. See United States v. Olano, 507 U.S. 725, 731-32 (1993); United States v. Johnson, 722 F.2d 407, 409 (8th Cir. 1983) (plain error review is applicable when defendant argues different ground from that of objection). On this basis alone, we could affirm. See Olano at 735-36 (court of appeals not required to correct plain error, but should correct plain error which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings"). Further, the transcript of the sentencing shows that the victim impact statements were not "demonstrably the basis for the challenged sentence." The court admitted the statements, but sentenced Sandifer to the lower half of the sentence range because of the harsh sentences for crack, Sandifer's troubled childhood and psychological background, the fact that this was Sandifer's first drug felony conviction, and the fact that the court felt that it had given Sandifer a "break" in the drug quantity determination (the only factor the court cited as weighing

in favor of a longer sentence).[3]  The district judge stated that the information in the victim impact statements confirmed what he already knew about the impact of drug dealing on a neighborhood and community.  We have no doubt that the experienced district judge knew of these effects before seeing the victim impact statements.  The statements had no effect on Sandifer's sentence.[4]

## II.

Sandifer next argues that the evidence was insufficient to support the conviction. We view the evidence in a light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences, and will reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime.  See United States v. McCarthy, 97 F.3d 1562, 1567 (8th Cir. 1996), cert. denied, 519 U.S. 1139 (1997).  The court instructed the jury to convict if it found Sandifer was in possession of crack, knew he was in possession of it, and intended to distribute it, or if it found that Sandifer was in possession of cocaine, knew he was in possession of it, and intended to manufacture crack.

Sandifer contends the conviction cannot stand because the evidence did not show that he was the one "cooking up" the crack.  He points to a lack of fingerprints on the Pyrex pitcher and other circumstantial evidence.  However, the evidence Sandifer relies upon is in conflict with the officers' testimony that they saw only Sandifer in the

[3]Sandifer does not argue that any of these factors are an inappropriate basis for sentencing.

[4]At oral argument we were informed by the Assistant United States Attorney that the victim impact statements were offered to give the victims an opportunity to "vent" their feelings.  The evidence that a district judge may consider in sentencing is quite broad.  We question, however, whether the rationale offered by the Assistant United States Attorney is a sufficient basis for consideration of these statements, which appear to have little, if any, relevance to any inquiries posed by the Sentencing Guidelines.

kitchen, Fulgham's testimony that Sandifer was the one "cooking up" the crack, and Hudson's testimony that he had previously seen Sandifer "cooking up" crack and that he had purchased crack from Sandifer. Sandifer claims that the testimony of Fulgham and Hudson was not credible because they were cooperating witnesses who received reductions in their sentences for substantial assistance. However, it "is the sole province of the jury to weigh the credibility of a witness." United States v. Gordon, 974 F.2d 97, 100 (8th Cir. 1992) (quoting United States v. Martinez, 958 F.2d 217, 218 (8th Cir. 1992)). There was ample evidence to sustain the conviction.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.