# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 00-2072

_____

United States of America,　　　　　*

　　　　　　*

　　　　Appellee,　　　　*

　　　　　　*

　　v.　　　　*

　　　　　　*

Jose Jiminez-Perez,　　　　*

　　　　　　*

　　　　Appellant.　　　　*


_____

No. 00-2134

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

United States of America,　　　　　*

　　　　　　*

　　　　Appellee,　　　　*

　　　　　　*

　　v.　　　　*

　　　　　　*

Francisco　Ramos-Moreno,　aka　　*
Francisco Ramos-Salvador,　　　　*

　　　　　　*

　　　　Appellant.　　　　*


_____

Submitted: December 12, 2000
Filed: February 7, 2001

_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Jose Jiminez-Perez and Francisco Ramos-Moreno appeal their convictions for drug trafficking offenses. On appeal, they challenge the sufficiency of the evidence to sustain their convictions, and Jiminez-Perez challenges the testimony of an alleged coconspirator. We affirm the judgments of the district court.[1]

I.

Viewing the evidence in the light most favorable to the verdict, as we must when considering the sufficiency of the evidence to sustain a verdict, United States v. Sandifer, 188 F.3d 992, 995 (8th Cir. 1999), a reasonable juror could have found the following. From approximately 1998 through 1999, Jose Girmaldo, Eduardo Morones, and Arturo Quintero-Jiminez, were major actors in a conspiracy to bring methamphetamine from California to Iowa for distribution. Another coconspirator, Jacqueline Cockerham Jass, cooperated as an undercover informant after her arrest in June of 1998.

Jass testified that she began purchasing methamphetamine from Jose Girmaldo in Marshalltown, Iowa. Girmaldo told Jass that the methamphetamine he and "his friends" distribute comes to Iowa from California and is transported inside hidden compartments of cars. He later introduced Jass to "his friends," Eduardo Morones and three others, who began to supply Jass's methamphetamine needs because they lived closer to her.

_____

[1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

-2-

Eduardo lived in Ackley, Iowa. Because he spoke mostly Spanish, his father-in-law, Arturo Quintero-Jiminez, translated for him and was present on each occasion when Jass purchased methamphetamine from Eduardo. After her arrest, Jass helped authorities arrange some undercover purchases from Arturo at his home on Eighth Avenue in Ackley. Special Agent Jon Neuschwanger of the Iowa Division of Narcotics Enforcement (DNE) participated in these undercover purchases.

On the morning of April 15, 1999, law enforcement officers conducted surveillance of the house on Eighth Avenue in Ackley for two hours prior to executing a search warrant. During this time, at about 9:35 a.m., Special Agent Neuschwanger placed a call to Arturo to arrange another methamphetamine purchase, and Arturo responded that he would talk to "his friends" to "see if they have that material." (Trial Tr. at 34.) Officers surveilling the home then observed Arturo leaving the house and going toward the detached garage located behind the house, returning a few minutes later. Arturo made two or three additional trips between the house and garage area during the surveillance period.

After executing the search warrant for the house at approximately 11:30 a.m., officers heard noises coming from the garage in back and went to investigate. The walk-in door to the garage was padlocked from the outside, and the overhead semi-transparent garage door was locked but allowed sufficient light into the garage. The defendants, Ramos-Moreno and Jiminez-Perez, were locked inside the garage and were either unable or unwilling to open the doors. The officers kicked open the walk-in door and found the two men inside with two vehicles. One of the vehicles was a blue Lincoln Continental with Iowa license plates, which was jacked up near the front left wheel. The wheel was loose, tools lay near it, and green putty shavings were on the floor beneath the wheel area. Officers found two PVC pipes sealed at each end with green putty and stacked upright along the garage wall. One pipe had a metal wire sticking out of the putty. A detective recognized this as a common method of shipping drugs concealed inside a vehicle. The officers opened the tubes and found balloons

filled with 1,266.68 grams of methamphetamine. Also, in a hidden panel in the trunk, officers found a sock containing nearly $16,000 cash.

The defendants had arrived in Ackley that same morning. They admitted that they had driven the Lincoln from California. The men stated that they had traveled to Iowa to find work, but their wallets contained no legal identification that would have permitted them to obtain lawful employment in Iowa. Jiminez-Perez had been the driver, and his wallet contained Arturo's phone number in Ackley. Officers found one change of clothing for each in the back seat and a few toiletries. The defendants had traveled with no luggage or personal items. Title to the Lincoln Continental was in the name of Arnulfo Vega Jr., of Ackley, Iowa. Although Ramos-Moreno gave a different name for the owner, he said he knew the man who owned the car.

A superseding indictment charged Ramos-Moreno and Jiminez-Perez, along with Arturo and Eduardo, with conspiracy to distribute and to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (1994), and with possessing with the intent to distribute 1,266.68 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (1994). A jury convicted Jiminez-Perez on both counts and convicted Ramos-Moreno on the conspiracy count. The others pleaded guilty and are not parties to this appeal.

II.

Sufficient evidence exists to support a verdict if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The standard for determining the sufficiency of the evidence is strict, and a guilty verdict should not be lightly overturned. United States v. Ryan, 227 F.3d 1058, 1063 (8th Cir. 2000). "We view the evidence in a light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences, and [we] will

reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime." Sandifer, 188 F.3d at 995.

"To convict an individual of conspiracy, the government must prove 'that there was a conspiracy with an illegal purpose, that the defendant was aware of that conspiracy, and that he or she knowingly became a part of it.'" United States v. Beckman, 222 F.3d 512, 522 (8th Cir. 2000) (quoting United States v. Mosby, 177 F.3d 1067, 1069 (8th Cir.1999), cert. denied, 120 S. Ct. 1260 (2000)). Either direct or circumstantial evidence can provide the basis of a conviction. Id. Once the government establishes the existence of a conspiracy, only slight evidence is required to link a defendant to the conspiracy. United States v. Womack, 191 F.3d 879, 884 (8th Cir.1999). This places a heavy burden on a defendant challenging the sufficiency of the evidence in a conspiracy case. Id. Nonetheless, the evidence must be sufficient to meet the Jackson v. Virginia reasonable doubt standard.

The defendants here concede that a conspiracy existed, but they deny that they were knowing participants in that conspiracy. Specifically, they argue that their mere presence at the scene is not sufficient to sustain their convictions, citing United States v. Rork, 981 F.2d 314 (8th Cir. 1992) (affirming the district court's grant of judgment of acquittal, concluding that Rork's mere presence did not establish he was a knowing member of the conspiracy). We conclude that Rork is factually distinguishable from the case at hand, which presents evidence of more than mere presence. Rork had been present in Steven Grade's trailer when Grade intended to sell cocaine. Rork knew that Grade intended to sell drugs, but no drug sale occurred that evening, and the government produced no evidence that Rork and Grade had entered into any prior agreement to distribute drugs. Id. at 315-16.

To the contrary, the evidence in the case at hand, while circumstantial, presents a sufficient showing of actions amounting to more than mere presence and linking the defendants to the conspiracy. Viewing the evidence in the light most favorable to the

verdict, the government demonstrated that the defendants arrived in Ackley early in the morning, but by around noon, they were still in the garage with the Lincoln, having been there at least since before surveillance began around 9:30 that morning. They had traveled from California in the Lincoln bearing Iowa plates, which was jacked up in the garage. Green putty shavings were on the floor under the loosened front tire of the Lincoln. Pipes concealing the methamphetamine and sealed with the same green putty were leaning against the garage wall, having recently been removed from a secret compartment located behind the front wheel. Arturo, who was arranging a methamphetamine sale by telephone with an undercover officer at that time, told the officer he would check with "his friends" to see if they had the "material," and he went back and forth between the garage area and the house several times while the defendants were in the garage.

As the district court noted when denying the defendants' post-trial motions for judgment of acquittal and a new trial, this "is certainly strong evidence that [the defendants] were in the process of unloading the drugs and this was more than two people who had just arrived in Ackley, Iowa." (Sent. Tr. at 14.) The defendants' actions suggest that they knowingly participated in bringing the methamphetamine to Iowa for distribution. Additionally, their explanation that they came to Iowa in search of employment is skeptical at best because their lack of proper identification would prevent them from successfully obtaining lawful employment in Iowa. Further, they came with no luggage or personal effects to indicate the type of permanent stay they professed to have intended.

Having carefully reviewed the record in the light most favorable to the verdict, we find that the evidence is sufficient to support a reasonable juror's conclusion that Ramos-Moreno and Jiminez-Perez were not merely present in the same physical place as the drugs and the transporting vehicle, but were knowing participants in the conspiracy to distribute that methamphetamine, bringing the methamphetamine from

California and unloading it in Arturo's garage. Accordingly, the district court properly denied their motions for judgment of acquittal.

Ramos-Moreno asserts that the district court abused its discretion by denying his motion for a new trial. He contends that the great weight of the evidence is contrary to the verdict and the interest of justice requires a new trial. A new trial should be granted only "if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." United States v. Rodriguez, 812 F.2d 414, 417 (8th Cir. 1987). We affirm a district court's ruling on a new trial motion absent a clear and manifest abuse of discretion. United States v. Covey, 232 F.3d 641, 647 (8th Cir. 2000). We are unable to conclude that a miscarriage of justice occurred in this case. Although the evidence was circumstantial in nature, it strongly suggested both of the defendants' knowing participation in the conspiracy. Thus, we conclude that the district court did not abuse its discretion by denying the motion for a new trial.

Finally, Jiminez-Perez argues that the district court erred by admitting into trial the testimony of Jacqueline Jass. We review the district court's evidentiary rulings for an abuse of discretion. United States v. Melecio-Rodriguez, 231 F.3d 1091, 1094 (8th Cir. 2000). "We will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict." Id. (internal quotations omitted). Coconspirator testimony may be admitted against a defendant provided the government proves "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." United States v. Bell, 573 F.2d 1040, 1043 (8th Cir.1978).

At trial, the district court allowed Jass to describe a conversation with Girmaldo in which he told her the manner in which he and "his friends" obtained drugs from California. He made these statements to her during 1998 and was arrested shortly thereafter. Agent Neuschwanger testified that the investigation of Girmaldo was

separate from and concluded before the investigation into the activities of Arturo and Eduardo. On this basis, Jiminez-Perez argues that he was not a member of any conspiracy with Girmaldo and that Girmaldo's statements were not made in furtherance of or during the course of any conspiracy with him.

"[S]tatements made by coconspirators before a defendant joins the conspiracy are admissible as long as the conspiracy or scheme existed at the time the statements were made." United States v. Huddleston, 810 F.2d 751, 753 (8th Cir. 1987) (internal quotations omitted). The evidence demonstrates that a conspiracy existed between Girmaldo, Arturo, and Eduardo at the time Girmaldo made the statement to Jass. That overall conspiracy to distribute methamphetamine did not fold with Girmaldo's arrest. Even assuming the defendants did not join the conspiracy until after Girmaldo's participation had ended, they nevertheless became members of the same overall conspiracy. Girmaldo's declarations to Jass, also a coconspirator, furthered the conspiracy by informing her of its methods, thereby helping to ensure her continued involvement. The evidence was certainly relevant, and we conclude that the district court's admission of the coconspirator's statements was proper, and we find no abuse of discretion.

III.

Accordingly, we affirm the judgments of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-