# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3167

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jeffrey Jordan, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 15, 2001

Filed: August 15, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and SCHREIER,[1]
    District Judge.

_____

WOLLMAN, Chief Judge.

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District
of South Dakota, sitting by designation.

Jeffrey Jordan appeals from his conviction entered in the district court[2] for conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and § 841(a)(1). We affirm.

On October 18, 2000, Jordan was convicted of the conspiracy offense by a jury and subsequently received a sentence of 384 months of imprisonment and 4 years of supervised release. Evidence at trial consisted of the testimony of numerous persons involved in the drug conspiracy and of several law enforcement officers. Various witnesses testified that Jordan possessed a duffel bag of guns and that he had been seen with other guns.

The two co-conspirators most relevant to this appeal are Joe Hartwig and Savino Aguilar. Hartwig worked for Jordan and witnessed many methamphetamine transactions. He testified about the transactions and the conspiracy and mentioned that he had been transporting a sawed-off shotgun from Mark Bradfield to Jordan when he was arrested in January of 1998. Bradfield, who bought methamphetamine from Jordan, confirmed that Jordan had given a shotgun to Bradfield to be shortened and that he (Bradfield) had given it to Hartwig. He also testified that Hartwig told him that Hartwig had gotten a kilo of methamphetamine from Jordan in Cedar Rapids. Hartwig's brother testified that Hartwig stated that a package Jordan had brought contained methamphetamine.

Savino Aguilar lived in Cedar Rapids and was Jordan's source for methamphetamine. The testimony of Eddie Mason, a methamphetamine user who had contact with Aguilar, included statements by Aguilar to the effect that Aguilar was also selling methamphetamine to someone in Indiana and that he owed $120,000 to his methamphetamine source.

---

[2]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

Jordan raises two evidentiary challenges to his conviction: (1) that the court erred when it admitted the statements of Aguilar and Hartwig through other witnesses because the statements were not made in furtherance of the conspiracy and (2) that the court erred in admitting the firearms evidence.

We review the evidentiary rulings of a district court for abuse of discretion, United States v. Jiminez-Perez, 238 F.3d 970, 974 (8th Cir. 2001), "keeping in mind that its discretion is particularly broad in a conspiracy trial," United States v. Dierling, 131 F.3d 722, 730 (8th Cir. 1997). The district court provisionally admitted the statements of Aguilar and Hartwig as co-conspirator testimony pursuant to Federal Rule of Evidence 801(d)(2)(E).[3] See United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978) (approving procedure of provisional admission of statement subject to later scrutiny to discern if government met burden of proof). At the end of trial, the court found that the government had met its burden, concluding that the statements were admissible under Rule 801(d)(2)(E) because they described the source of the drugs and explained and identified the extent, scope, and participants of the conspiracy.

Co-conspirator statements may be admitted against a defendant if the government proves that (1) a conspiracy existed, (2) the declarant and the defendant were members of that conspiracy, and (3) the declaration was made during the course of and in furtherance of the conspiracy. Jimenez-Perez, 238 F.3d at 974. "A statement that simply informs a listener of the declarant's criminal activities is not made in furtherance of the conspiracy; instead, the statement must somehow advance the objective of the conspiracy." United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994) (quotation marks and citation omitted).

_____

[3]"A statement is not hearsay if – . . .

(2) . . . The statement is offered against a party and is . . . (E) a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).

Jordan contends that the four co-conspirator statements, two from Aguilar and two from Hartwig, should not have been admitted because they were not made in furtherance of the conspiracy. Jordan acknowledges that we interpret the phrase "in furtherance of" broadly, see United States v. Gjerde, 110 F.3d 595, 603 (8th Cir. 1997), but contends that Aguilar's statements to Mason were no more than idle chatter and did nothing to advance the conspiracy. He also contends that Hartwig's statements were solely informative and so did not advance the conspiracy.

We conclude that the district court did not abuse its discretion in admitting the co-conspirator statements. The statement by Hartwig to his brother identified Jordan as his source for methamphetamine and thus is admissible. See United States v. Meeks, 857 F.2d 1201, 1203 (8th Cir. 1988) ("Statements . . . identifying a co-conspirator's source for [drugs] have been deemed to be statements made 'in furtherance' of the conspiracy."). Similarly, Hartwig's statement to Bradfield again identified Jordan as Hartwig's source and also indicated the quantity of drugs involved in the conspiracy, keeping Bradfield "abreast of current developments," United States v. Darden, 70 F.3d 1507, 1529 (8th Cir. 1995), and providing information on the scope of Jordan's methamphetamine enterprise. A statement informing a co-conspirator of the methods of obtaining methamphetamine is admissible because it is designed to help ensure continued involvement. Jiminez-Perez, 238 F.3d at 974-75. The statements made by Aguilar to Mason identify other participants in the conspiracy and indicate Aguilar's source and are thus admissible. See United States v. Johnson, 925 F.2d 1115, 1117 (8th Cir. 1991) (statements identifying participants and discussing various roles admissible).

Turning to the firearms evidence, Jordan argues that the testimony linking him to a duffel bag of guns, a sawed-off shotgun, and other guns was irrelevant, inflammatory, and highly prejudicial, and thus should have been excluded. The district court allowed the evidence because guns are tools of the drug trade and because the testimony about the shotgun was relevant to Jordan's self-protection efforts.

-4-

We find no abuse of discretion in the court's ruling that the firearms evidence was relevant and more probative than prejudicial. "Weapons are key tools in the drug trade and can be evidence of a drug conspiracy," Dierling, 131 F.3d at 732, and in this case there was evidence that the weapons were used for protection and for barter in the conspiracy. The gun evidence also "'completes the story' or provides a 'total picture' of the charged crime." United States v. Forcelle, 86 F.3d 838, 842 (8th Cir. 1996) (citation omitted).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.