# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4449

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Billy D. Davis, also known as Lil | * | |
| Spook, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: June 15, 2006
Filed: August 9, 2006

_____

Before BYE, LAY, and RILEY, Circuit Judges.

_____

LAY, Circuit Judge.

A jury found Billy D. Davis guilty of conspiracy to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 846. On appeal, Davis challenges the district court's[1] denial of his motion to suppress evidence seized pursuant to a traffic stop and subsequent search of his person. Davis also argues the district court committed several evidentiary errors, including: (1) admitting evidence regarding the seizure of crack cocaine under Federal Rule of Evidence 404(b); (2) refusing to admit

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

Davis' proposed expert testimony on sentencing; and (3) admitting hearsay testimony under the coconspirator exception. Finally, Davis raises several objections to the 360 month sentence imposed by the district court. For the reasons set forth below, we affirm.

## I. BACKGROUND

At trial, the government's case-in-chief relied upon the testimony of two Omaha Police Department officers and four cooperating witnesses. Davis had two witnesses refute parts of the government's case and testified on his own behalf.

### A. Officer Gassaway

Officer Jeffrey Gassaway of the Omaha Police Department was the first witness for the government. Officer Gassaway testified that while he had repeated contact with Davis during the course of his work, the police discovered Davis' involvement in the instant conspiracy during the investigation, arrest, and prosecution of a large number of individuals involved in similar narcotics cases.[2] Officer Gassaway also testified about the events following a traffic stop on February 12, 2001. The driver of the vehicle remained in the car while three passengers ran into a residence. After receiving permission from the owner to search the residence, officers found the occupants of the vehicle inside and a small baggie containing crack cocaine behind a downstairs toilet. The officers took hand swabs of the vehicle's occupants, and Davis' tested positive for crack cocaine. However, one of the other passengers of the vehicle claimed the crack belonged to him. The district court admitted the testimony of these events, over Davis' objection, pursuant to Federal Rule of Evidence 404(b).

---

[2]Davis contended the instant prosecution was the result of a vendetta against him by Officer Gassaway. Davis was acquitted by a jury in a previous federal prosecution in which Officer Gassaway was the case agent.

## B. Officer Rieck

Officer David Rieck of the Omaha Police Department testified that he stopped a vehicle in which Davis was a passenger on October 12, 2001, because the driver failed to signal a turn. As Officer Rieck turned on his lights to execute the stop, he saw an individual in the backseat, later identified as Davis, make "furtive movements." Officer Rieck testified it appeared Davis "raise[d] his torso up off the right rear seat, and his hand goes behind him as if he's placing something either under him, under the seat, or somewhere on his person." These movements suggested to Officer Rieck that Davis was trying to conceal something.

After informing the driver he was under arrest for driving with a suspended license, Officer Rieck asked the passengers to exit the vehicle so it could be searched. As Davis exited the vehicle, Officer Rieck requested, and received, permission to search Davis' person. Officer Rieck testified that when he swept Davis' buttocks area, he felt a rock or marble-like object. The officers handcuffed Davis, placed him in a police cruiser, and drove him approximately half a block to a police assembly building. Davis became very upset and began thrashing his body, requiring several officers to restrain him. At the police assembly building, Officer Rieck sought permission from his sergeant to conduct a strip search on Davis. However, a strip search was not necessary because, due to Davis' thrashing, his baggy pants and underwear had fallen below his waist. Officer Rieck then saw the tip of a plastic bag protruding from Davis' buttocks and retrieved it.

## C. Cooperating Witnesses

The government also presented the testimony of four cooperating witnesses, all of whom were serving lengthy prison terms for crack cocaine conspiracies. These witnesses recounted the details of various drug deals in which Davis played a part.[3]

---

[3]Davis objected to these witnesses' testimony in a pro se letter filed with the court. After carefully considering Davis' arguments, we find them to be without merit.

Victor Henderson, one of the cooperating witnesses, testified that he bought crack cocaine from Davis on two separate occasions through an intermediary. Both times, Henderson waited in a car while Parish Swift went inside a $.99 cent store. Henderson testified he lost sight of Swift when he entered the store, but when Swift returned he had crack cocaine and stated he bought it from Davis. Davis objected to this testimony as hearsay. The district court allowed the statement to come into evidence under the coconspirator exception to the hearsay rule.

### D. Evidence Presented by the Defense

Davis testified on his own behalf, admitting that he sold marijuana and used crack cocaine, but denying that he ever sold cocaine. Davis also denied knowing two of the cooperating witnesses who testified against him. Marcus Brown testified on behalf of Davis, stating he observed Officer Gassaway harassing Davis at a local festival. Parish Swift also testified, denying he ever bought crack cocaine from Davis on behalf of Victor Henderson. The district court denied Davis' request to call the Federal Public Defender for the District of Nebraska to provide expert testimony about the sentencing guidelines, statutory minimum sentences, and substantial assistance.

### E. Sentencing

The jury found Davis guilty of conspiracy to distribute or possess with intent to distribute 50 grams or more of crack cocaine. The presentence investigation report held Davis accountable for 2.47 kilograms of crack cocaine, setting his offense level at 38. With a criminal history category of VI, the advisory guidelines range was 360 months to life in prison. Davis objected to the presentence investigation report's calculation of drug quantity, arguing the attributed amount was based upon mere speculation and contending that the drug quantity should have been found by the jury. The district court adopted the findings of the presentence investigation report and sentenced Davis to 360 months' imprisonment, at the low end of the advisory guidelines range.

## II. DENIAL OF MOTION TO SUPPRESS

Davis first argues the district court erred by refusing to suppress crack cocaine found on Davis' person during the search conducted by Officer Rieck on October 12, 2001. When considering a denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Esquivias*, 416 F.3d 696, 699 (8th Cir. 2005).

Law enforcement officers may briefly detain an individual for investigative purposes if they have a reasonable and articulable suspicion of criminal activity. *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (citing *Terry v. Ohio*, 392 U.S. 1, 25-31 (1968)). In determining whether reasonable suspicion exists, we consider the totality of the circumstances in light of the officers' experience and specialized training. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). During a *Terry* stop, an officer who has reason to believe the detained individual may be armed and dangerous may conduct a pat-down search for weapons to ensure officer safety. *Bustos-Torres*, 396 F.3d at 943.

During the course of the lawful traffic stop, Officer Rieck saw Davis rise off the seat and place his hand behind his back as if he were placing something underneath or behind him. Officer Rieck testified this behavior was unusual and raised suspicion that Davis was attempting to hide something. Suspicious behavior by a passenger during a traffic stop may reasonably warrant a pat-down of the individual. *See United States v. Moorefield*, 111 F.3d 10, 13-14 (3d Cir. 1997) (collecting cases); *see also United States v. Malone*, 49 F.3d 393, 397 (8th Cir. 1995); *United States v. Woodall*, 938 F.2d 834, 837 (8th Cir. 1991). Moreover, the district court concluded, and Davis

concedes, Officer Rieck received Davis' consent to search his person.[4] We conclude that either of these grounds support the search of Davis at the scene.

As Officer Rieck swept Davis' buttocks area, he felt a hard, marble-like substance and suspected Davis was attempting to conceal narcotics. While Davis concedes Officer Rieck had the right to execute the traffic stop and conduct the pat-down, he argues that once Officer Rieck determined he was unarmed there was no legal authority to place him in handcuffs, transport him to the police assembly building, and further search him. We disagree. Davis' suspicious behavior during the traffic stop and Officer Rieck's subsequent discovery of what he believed to be narcotics in Davis' buttocks area gave Officer Rieck probable cause to believe Davis was attempting to conceal narcotics. *See Bustos-Torres*, 396 F.3d at 944-45; *United States v. Williams*, 139 F.3d 628, 630 (8th Cir. 1998); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994); *United States v. Hughes*, 15 F.3d 798, 802 (8th Cir. 1994). The officers had probable cause to arrest Davis, transport him to the police assembly building, and remove the crack cocaine from his person as a search incident to arrest. *See United States v. Mendoza*, 421 F.3d 663, 667-68 (8th Cir. 2005). Therefore, the district court properly denied Davis' motion to suppress.

## III. EVIDENCE OF PRIOR BAD ACTS

Officer Gassaway testified he found crack cocaine behind a toilet in a residence Davis and two other men entered following the initiation of a traffic stop on February 12, 2001. Davis objects to the admission of this testimony, arguing it was irrelevant and prejudicial because one of the other passengers confessed the crack cocaine

---

[4]Davis argues the search at the scene of the traffic stop went beyond the scope of his consent to conduct a search. Davis alleges Officer Rieck literally reached into Davis' buttocks with his fingers. However, the district court chose to credit Officer Rieck's version of the events, and we have no reason to dispute that conclusion. *See Esquivias*, 416 F.3d at 699-700.

belonged to him and none of the individuals involved in the incident are named in the instant conspiracy.

We review for an abuse of discretion a district court's admission of evidence of prior bad acts under Federal Rule of Evidence 404(b). *United States v. Katz*, 445 F.3d 1023, 1029 (8th Cir. 2006). "Evidence of other crimes, wrongs, or acts" may be admissible for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). A district court has "broad discretion in admitting such evidence and will be reversed only if such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *Katz*, 445 F.3d at 1029 (citations and internal quotations omitted). Evidence is admissible if it is (1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) supported by sufficient evidence to support a finding by a jury that the defendant committed the other act; and (4) if the potential prejudice does not substantially outweigh the probative value of the evidence. *United States v. Kern*, 12 F.3d 122, 124-25 (8th Cir. 1993).

In this case, the challenged testimony linked Davis with crack cocaine on February 12, 2001, within the time period of the charged conspiracy. It is undeniable that evidence of crack cocaine linked to a defendant during the time period of an alleged conspiracy to distribute crack cocaine is relevant as to the defendant's knowledge and intent. Moreover, the district court noted the evidence was relevant in light of Davis' defense that Officer Gassaway was pursuing a personal vendetta against him. The district court did not abuse its discretion when it admitted Officer Gassaway's testimony into evidence.

IV. EXCLUSION OF EXPERT TESTIMONY

Davis next argues the district court interfered with his right to present a defense by refusing to admit the expert testimony of the Federal Public Defender regarding

substantial assistance and the mechanics of the federal sentencing process. Davis intended to use this testimony to impeach the credibility of the government's cooperating witnesses, calling into question their motivation for testifying against Davis, and thereby raising doubt as to the reliability of their testimony. We conclude the district court did not abuse its discretion by refusing to admit the expert testimony. *United States v. Anderson*, 446 F.3d 870, 874 (8th Cir. 2006) (standard of review).

Each cooperating witness testified he was facing a lengthy prison sentence and hoped to reduce his sentence by testifying against Davis. Each witness testified the government would have to file a motion asking the court to reduce his sentence. The jury did not need expert testimony explaining the details of sentencing procedures to understand that the government's witnesses might have an incentive to incriminate Davis. "Expert testimony is appropriate when it relates to issues that are beyond the ken of people of ordinary intelligence. 'Where the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous.'" *United States v. French*, 12 F.3d 114, 116 (8th Cir. 1993) (quoting *Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 530 (8th Cir. 1980)). In addition, the district court gave the jury an instruction fully explaining substantial assistance and the jurors' ability to weigh the credibility of a cooperating witness. This instruction, coupled with defense counsel's own arguments, "sufficiently communicated to the jury the information it needed to assess the incentives government witnesses had to stretch or shade the truth in order to obtain sentence reductions." *Id.* at 117 (internal quotations omitted).[5]

---

[5]Davis also argues he was not allowed to sufficiently cross examine the government's witnesses on the particulars of the sentencing guidelines table and statutory minimum sentences. We reject this argument for the same reasons discussed above and conclude the district court did not abuse its discretion in deciding to limit cross examination. *See United States v. Wipf*, 397 F.3d 677, 683 (8th Cir. 2005) (standard of review).

V. ADMISSION OF HEARSAY TESTIMONY

Victor Henderson testified that Parish Swift bought cocaine for him from Billy Davis. Henderson claimed that while he never observed the transactions, Swift told him he purchased the cocaine from Davis. Swift testified and denied ever having bought cocaine from Davis for Henderson. Davis argues the district court erred when it admitted Henderson's hearsay testimony because Swift was not a member of the charged conspiracy. We review the district court's evidentiary rulings for an abuse of discretion, "keeping in mind that its discretion is particularly broad in a conspiracy trial." *United States v. Jordan*, 260 F.3d 930, 932 (8th Cir. 2001) (internal citations and quotations omitted).

An out-of-court statement is not hearsay if it is offered against the defendant and is a statement of the defendant's coconspirator made during the course and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E); *United States v. Manfre*, 368 F.3d 832, 837 (8th Cir. 2004). While we interpret the phrase "in furtherance of the conspiracy" broadly, "a statement that simply informs the listener of the declarant's criminal activities is not made in furtherance of the conspiracy." *United States v. McKay*, 431 F.3d 1085, 1093 (8th Cir. 2005) (citation and internal quotations omitted).

Despite Davis' objections, it is not necessary for Swift to be formally charged, or even named, in the conspiracy, "so long as the statement in question was itself sufficiently reliable in demonstrating the applicability of Rule 801(d)(2)(E)." *United States v. Mahasin*, 362 F.3d 1071, 1084 (8th Cir. 2004). After provisionally allowing Henderson's testimony under *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978), the district court later concluded it "believe[d] that there is enough evidence that was introduced by the government of a conspiracy to link the statements of the declarant into the conspiracy." Swift's statements to Henderson identified Davis as a source of crack cocaine. Coconspirators' statements that discuss the supply source for the

illegal drugs or identify a coconspirator's role in the conspiracy are considered statements made "in furtherance" of the conspiracy. *United States v. Arias*, 252 F.3d 973, 977 (8th Cir. 2001); *see also Jordan*, 260 F.3d at 933 ("A statement informing a coconspirator of the methods of obtaining [drugs] is admissible because it is designed to help ensure continued involvement."). Therefore, we conclude the district court did not abuse its discretion in admitting this testimony.

## VI. SENTENCING

Finally, Davis raises several objections to the sentence imposed by the district court. First, Davis argues the district court violated his Sixth Amendment rights by holding him accountable for a quantity of crack cocaine found by a preponderance of the evidence, rather than submitting this issue to the jury to find beyond a reasonable doubt. This argument is without merit. It is well established in this circuit that "judicial findings of drug quantity for sentencing purposes do not violate the Sixth Amendment when made under an advisory Guidelines regime." *United States v. Tabor*, 439 F.3d 826, 830 (8th Cir. 2006). While the district court could have given the jury a special verdict form to determine the drug quantity for which Davis was responsible, the court was not in error for failing to do so. *See United States v. Haack*, 403 F.3d 997, 1003 (8th Cir. 2005) ("[W]ith the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection.") (quotation and citation omitted).

Second, Davis argues the thirty-year sentence imposed by the district court is unreasonable because it is excessively greater than necessary to punish Davis. To support this argument, Davis contends it was unreasonable for the district court to rely upon the presentence investigation report to determine drug quantity. Davis also contends the district court erred in relying upon the sentencing guidelines for crack

cocaine because they result in disproportionate sentences for crack and powder cocaine offenders.

A sentencing court must first determine the advisory guidelines range and then consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether to impose a sentence under the guidelines. *Haack*, 403 F.3d at 1003. We review the district court's application of the sentencing guidelines de novo, its factual findings for clear error, and the ultimate sentence for reasonableness in accordance with the factors listed in § 3553(a). *United States v. Davidson*, 437 F.3d 737, 739-40 (8th Cir. 2006).

The district court adopted the presentence investigation report's calculation of drug quantity, denying Davis' objections "[g]iven the evidence presented at trial." The district court was present throughout the trial to hear the evidence and weigh the credibility of the witnesses. Davis has presented us with no reason to question the district court's determination, other than his own disagreement with the truthfulness of the government's witnesses. In light of the district court's "comparative advantage at evaluating credibility," *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005), we conclude the district court did not clearly err in adopting the presentence investigation report's calculation of drug quantity.

The district court determined the offense level was 38 and Davis' criminal history category was VI, resulting in an advisory guidelines range of 360 months to life in prison. After stating it considered the § 3553(a) factors, the district court determined a sentence of 360 months' imprisonment was reasonable. A sentence within the guidelines range is presumptively reasonable. *Id.* A sentence may be unreasonable if "the district court failed to consider a relevant factor that should have received significant weight, gave significant weight to an improper or irrelevant factor, or otherwise committed a clear error of judgment." *Davidson*, 437 F.3d at 741 (citing *Haack*, 403 F.3d at 1004).

-11-

Davis contends the district court unreasonably relied upon the 100-to-1 drug quantity ratio between crack and powder cocaine in the sentencing guidelines because it results in irrational and unfair sentencing disparity. Our court has previously addressed and rejected this argument. *United States v. Cawthorn*, 429 F.3d 793, 803 (8th Cir. 2005) (holding that "sentencing within the Guidelines based on the crack-powder disparity is not inherently unreasonable").

Finally, Davis appears to make an undefined argument that the district court summarily sentenced him within the guidelines range without giving proper weight to the § 3553(a) factors. While the district court did not make explicit findings as to each factor, the record reflects the district court acknowledged it could sentence anywhere within the statutory limitations after considering the advisory guidelines and the § 3553(a) factors. The district court listed all the factors it was considering to arrive at a reasonable sentence and acknowledged its obligation to do so. From the record before us, "we are satisfied that the district court actually considered each factor in determining an appropriate sentence." *United States v. Cadenas*, 445 F.3d 1091, 1095 (8th Cir. 2006).

## VII. CONCLUSION

For the above stated reasons, we affirm the district court.

BYE, Circuit Judge, dissenting in part and concurring in the result.

Although I agree with the result in this case, I write separately to express my disagreement with the Court's analysis of the denial of the motion to suppress in Section II.

The law enforcement officers did not have probable cause to arrest Davis for a narcotics violation at the time he was placed in handcuffs because the officers had not yet uncovered the crack cocaine concealed in Davis's buttocks at that time. As a consequence, the subsequent search which disclosed the drugs cannot be justified on the grounds it was a search incident to a lawful arrest. The fruits of a search cannot be used as the basis for an arrest, which in turn is used to justify a search incident to arrest. See Smith v. Ohio, 494 U.S. 541, 543 (1990) ("[J]ustifying the arrest by the search and at the same time the search by the arrest just will not do.") (internal citations and quotations omitted); see also Rawlings v. Kentucky, 448 U.S. 98, 111 n.6 (1980) (indicating the fruits of a search must not be the basis for the probable cause for a simultaneous arrest). The Court's analysis simply cannot be reconciled with the Supreme Court's Fourth Amendment jurisprudence.

Furthermore, the Court's analysis blurs the important distinction between probable cause to *arrest* and probable cause to *search*. See generally W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.1(b) (4th ed. 2004) (discussing the distinction). A warrantless search (outside the context of a search incident to a lawful arrest) generally requires both probable cause *and* exigent circumstances. Kleinholz v. United States, 339 F.3d 674, 676 (8th Cir. 2003). By implicitly equating probable cause to arrest with probable cause to search, the Court essentially eviscerates the exigent circumstances requirement for a warrantless search. Under the Court's analysis, law enforcement officers will have no incentive to obtain a warrant for a search – even when there are no exigent circumstances – they will simply place a suspect under arrest and then conduct a search incident to arrest.

Although I do not agree with the Court's analysis of the denial of the motion to suppress, I nonetheless concur in the result because I believe the warrantless seizure of the crack cocaine found in Davis's buttocks was permissible under the "plain

touch" or "plain feel" doctrine, which is simply an extension of the "plain view" doctrine to a pat-down search:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

United States v. Bustos-Torres, 396 F.3d 935, 944 (8th Cir. 2005) (quoting Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993)). I believe the contour, mass, and location of the rock-like object Officer Rieck felt when he conducted the pat-down search on Davis, coupled with his past experience and knowledge of people hiding drugs in the their buttocks, as well as the suspicious behavior he observed when Davis was in the back seat of the vehicle, together were enough to make the contraband's incriminating character immediately apparent to Officer Rieck and to justify its warrantless seizure during the pat-down search. If Officer Rieck was justified in immediately seizing the contraband during the pat-down search, I see no reason why he was not also justified in seizing it during the subsequent search which occurred at the police assembly building.

I therefore concur in the result in this case.

_____

-14-