# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4018EA

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Eastern District |
| Michael James Evans, | * | of Arkansas. |
| | * | |
| Appellant. | * | |

_____

Submitted: May 9, 2000

Filed: July 20, 2000

_____

Before RICHARD S. ARNOLD and HEANEY, Circuit Judges, and MAGNUSON,[1] District Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

The defendant, Michael James Evans, was implicated during a large-scale drug investigation in Arkansas that was referred to as "Operation Wholesale." After a two day jury trial, Mr. Evans was found guilty of selling cocaine base, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 84 months' imprisonment (seven years). The defendant now challenges that verdict. On appeal, he argues that there was insufficient

_____

[1]The Hon. Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

evidence against him, and that the trial court erred in denying his motion for a new trial. We affirm the judgment of the District Court.[2]

## I.

The defendant was charged with selling cocaine base in an undercover investigation known as "Operation Wholesale," a joint venture by the FBI and Arkansas State Police targeting drug dealers in five counties in South Arkansas. The chief witness against the defendant at trial was Trooper Clayton Richardson. Trooper Richardson worked with Roy Lee Russell, an informant who was familiar with drug dealers in Dumas, Arkansas.

At trial, Trooper Richardson testified that on January 29, 1998, he watched the defendant sell crack cocaine to Russell. He testified that the defendant was "standing in the yard right off from a trailer, house trailer" (Tr. 25). Trooper Richardson stated that a streetlight provided enough light for him to see this transaction. Trooper Richardson gave a description of the particular house trailer, and stated that the trailer was on Willow Street. He identified a photograph of the house trailer, and testified that when the sale was over, the defendant put his hand on the trailer door and pulled it open. Russell then walked back to Trooper Richardson, and surrendered the cocaine to him.

The Reverend Robert W. Finch testified for the defendant, and contradicted Trooper Richardson's testimony about the trailer. Mr. Finch stated that he owned the trailer, and had purchased it on February 13, 1998. The trailer was delivered to Willow Street in Dumas sometime after that date. Before that time, the trailer was located at "Traditional Mobile Homes," a mobile-home store on Highway 65 in Pine Bluff,

---

[2]The Hon. James M. Moody, United States District Judge for the Eastern District of Arkansas.

Arkansas. As such, there was no way it could have been in Dumas at the time of the drug sale. Mr. Finch produced paperwork that confirmed the date of the purchase of the trailer. He explained that there was no structure of any kind on the lot before February of 1998, and that the only thing on the lot was a "pea patch."

Russell, the informant, testified at trial that he had been working with Trooper Richardson on January 29, 1998, but that he had not purchased cocaine from the defendant. Russell acknowledged on cross-examination that he had provided untruthful testimony in previous trial proceedings in the same district. He also admitted that he had attended a December 9, 1998, trial-preparation meeting concerning the defendant, but did not tell anyone at that meeting that the defendant had not sold him crack cocaine. Russell received payment of more than $34,000 as an informant.

The government called two rebuttal witnesses. Ms. Johnnie Hickman, the informant's former fiancée, testified that Russell had solicited payment from certain defendants charged in Operation Wholesale in exchange for Russell's favorable testimony. She identified the defendant as one of the individuals who were paying Russell. Special Agent Steve Pinkstone of the Federal Bureau of Investigation testified that when Russell was still being paid by the government, he was willing to implicate the defendant in the cocaine sale. Agent Pinkstone testified that he had shown a photograph of the defendant to Russell prior to the defendant's arrest, and that he had made clear to Russell that the defendant was about to be arrested for selling cocaine. Agent Pinkstone offered a report created after a monthly meeting with Russell. In this report, Agent Pinkstone recorded the names provided to him by Russell of individuals who were selling Russell cocaine base. The defendant's name was on that list, and the record was introduced into evidence.

After hearing all the evidence, the jury voted to convict the defendant. After trial, the defendant filed a Motion for Judgment of Acquittal or for New Trial. This motion was denied. The defendant then filed a Supplemental Motion to Amend his

Motion for Judgment of Acquittal or for New Trial. This motion alleged, *inter alia*, that the defendant was denied effective assistance of counsel at trial. After a hearing, this motion was also denied.

## II.

The defendant first argues that there was insufficient evidence to support his conviction. In addressing this claim, we view the evidence in the light most favorable to the verdict, and give the government the benefit of all reasonable inferences. United States v. Warren, 18 F.3d 602, 603 (8th Cir.), cert. denied, 513 U.S. 1050 (1994).

The defendant contends that Trooper Richardson's testimony was the only proof linking him to the crime. The defendant asserts that the Reverend Mr. Finch's testimony demonstrated that Trooper Richardson was an unreliable witness. In addition, Trooper Richardson's notes indicated that the defendant had no distinguishing characteristics, when in fact the defendant had a unique hairstyle. The defendant argues that Trooper Richardson did not make an identification of him prior to trial, yet maintained he could identify him at trial. Finally, the defendant points to several substantial problems with Operation Wholesale in its entirety.

We believe that a reasonable juror, given all of this evidence, could have found that the defendant sold drugs to the informant. Mr. Finch's testimony certainly appears to have been good evidence that could have damaged Trooper Richardson's credibility. However, it is possible the jury chose not to believe his testimony. This was a credibility determination they were entitled to make. Alternatively, the jury might have believed Mr. Finch's testimony, but also believed that Trooper Richardson saw the defendant sell cocaine to Russell in front of a different trailer. Mr. Finch's testimony does not directly contradict Trooper Richardson's central contention that he clearly saw the defendant sell Russell cocaine.

-4-

Operation Wholesale had its problems, as the charges brought pursuant to it have demonstrated.[3]  However, at the end of the day, this case was about whether the jury believed Trooper Richardson that he had seen the defendant sell cocaine to Russell. There was sufficient evidence in the record for the jury, who had evaluated all the witnesses, to believe him.

## III.

Next, the defendant argues that the trial court erred in denying his motion for a new trial.  The defendant first argues that he should have been given a new trial because he was denied effective assistance of counsel.  Normally this type of argument is better evaluated on collateral review, but here the record is sufficiently developed to enable us to assess the contention properly.

The defendant primarily argues that his trial counsel was ineffective for failing to cross-examine Trooper Richardson on other misidentifications he had made in Operation Wholesale.  At a pre-trial conference, the judge ruled that the defense could cross-examine Trooper Richardson on this subject.  However, at trial, defense counsel did not do so.  Defense counsel later said that he had misunderstood the judge's ruling. The defendant argues that if the jury had been exposed to this line of questioning, they would have been more likely to believe that Trooper Richardson had an unreliable memory, and Mr. Finch's testimony would have been more damaging.

We disagree with the defendant that his trial counsel's performance was deficient under Strickland v. Washington, 466 U.S. 668 (1984), because there is no proof that

---

[3]Of the 51 indictments and 43 criminal cases generated by Operation Wholesale, over half have been dismissed.  The informant, who was paid to complete drug transactions and testify against sellers, subsequently claimed several reports and identifications were not accurate.  The government ultimately prosecuted this informant.  See also United States v. Block, 205 F.3d 1348 (8th Cir. 2000).

Trooper Richardson had in fact misidentified other individuals implicated as a part of Operation Wholesale. The defendant points to the case of Theodore Patrick, who was acquitted of a drug charge because his attorney demonstrated that on the date he had allegedly participated in a drug transaction, he was in fact in jail. The defendant argues that the jury should have been made aware that a misidentification had been made in the past. We believe, however, that the defendant ignores a key distinction. It was Russell, the informant, who misidentified Patrick. Trooper Richardson never asserted that he could identify Patrick. Indeed, once Russell started to change his testimony, cases where he was the only witness capable of identification were dismissed. To question Trooper Richardson about Russell's misrepresentations or mistakes would only have cast doubt upon the credibility of Russell, who was a defense witness in this case.

Second, the defendant argues that his motion for a new trial should have been granted because there was improper juror conduct. After the verdict, a juror wrote the judge advising him that she wanted to change her vote to "not guilty." This letter also stated that "my husband has probably very wisely advised me on more than one occasion since the very first night of the trial, to just put it behind me - it's over." The defendant argues that this demonstrates that this juror was exposed to an extraneous influence. The defendant further argues that this extraneous influence had a prejudicial effect, because in the letter the juror also stated she was uneasy that there was no alibi nor were there any character witnesses. From this statement, the defendant infers that the juror did not hold the government to its "guilty beyond a reasonable doubt" standard of proof.

To impeach a jury verdict, the defendant must "(1) produce evidence which is not barred by the rule of juror incompetency and (2) produce evidence sufficient to prove grounds recognized as adequate to overturn the verdict." United States v. Krall, 835 F.2d 711, 715 (8th Cir. 1987) (citing United States v. Eagle, 539 F.2d 1166, 1169-70 (8th Cir. 1976), cert. denied, 429 U.S. 1110 (1977)). The defendant relies on his

contention that the juror's conversations with her husband occurred before the verdict, at a time when the juror ought not to have been discussing the case with anyone. We cannot agree with this argument for several reasons. First, the language of the juror's letter to the Court is ambiguous. On the one hand, it does say that her husband had spoken to her about the case on the first night of the trial. On the other hand, the phrase "it's over" indicates that the conversation may have taken place at the end of the trial. In any event, and even if defendant's husband said something to her about the case before the trial was over, we see no prejudice. The husband expressed no view as to the merits of the case one way or the other. He stated only that, however the case came out, the juror should not second-guess her own decision. We do not believe that this conversation, even though perhaps in violation of the standard admonition not to discuss a case before the jury retires to deliberate, violated any of defendant's substantial rights.

The juror's desire to change her vote comes too late.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-