# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2254

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| Gabriel Parra Lopez, | * | |
| | * | |
| Appellant. | * | |

_____

No. 04-2257

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Johnny Manuel Cervantes, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 14, 2004
Filed: July 18, 2005 (corrected 9/13/05)

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

Lopez and Cervantes appeal their convictions and sentences for conspiracy to distribute and possession with intent to distribute more than 500 grams of methamphetamine. We affirm.

## I.    BACKGROUND

We recount the evidence in the light most favorable to the jury verdict. United States v. Selwyn, 398 F.3d 1064, 1065 (8th Cir. 2005). In February 2003, a drug task force in South Dakota executed a search warrant at Geneva Green's residence on the South Dakota Lower Brule Indian Reservation and found methamphetamine and marijuana. After this, Green began aiding the task force in uncovering the scope of the methamphetamine conspiracy with which she was involved. Green told the task force that her drug source was Cervantes and that he had been supplying her with methamphetamine since July or August 2002. According to Green, Cervantes usually "fronted" the drugs, and Green paid him later. In the past, Green had watched Cervantes retrieve drugs from the hood area of his vehicle. The task force eventually set up a controlled buy between Green and Cervantes, to occur on March 29, 2003, in Murdo, South Dakota. That day, Green was searched for drugs, outfitted with electronic monitoring devices, and followed by drug agents to the controlled buy.

Cervantes lived in Washington, and Lopez, Cervantes' uncle, lived in California.[1] At the controlled drug buy, Lopez and Cervantes arrived at a gas station in Murdo, South Dakota, in a white SUV. Lopez was driving. Initially, Green got

_____

[1]There was much ado in the record about where Lopez and Cervantes lived–either in California, Oregon, or Washington. We fail to see the relevance of that dispute, other than to note that neither lived anywhere near South Dakota, where the controlled buy took place. Suffice it to say that both lived or spent significant amounts of time in one or more of those three west coast states.

into the SUV with Lopez and Cervantes. Green and Cervantes soon exited the SUV and got into Green's car. There, Cervantes told Green he had to go get the drugs, left Green's car, and returned to the SUV. Lopez and Cervantes then drove a short distance to retrieve the drugs. When they returned, Cervantes got out of the SUV, entered Green's car, and gave Green over 600 grams of methamphetamine. Cervantes told her that he would need the money for the drugs soon. After the controlled buy, Green drove to a predetermined spot, and the task force agents retrieved the methamphetamine. Other agents followed Lopez and Cervantes, pulled them over, and a drug dog alerted to the hood area of the SUV. The agents did not find any drugs, but they did find that the air breather in the hood area was easily removable and missing its air filter.

Count I of the indictment charged Cervantes and Lopez with conspiring to distribute 500 or more grams of methamphetamine between January 1, 2002, through March 26, 2003. Count II of the indictment charged Lopez and Cervantes with possession with intent to distribute, and aiding and abetting that same offense, based on the March 29, 2003, controlled buy. Cervantes and Lopez were tried together, and Green testified as part of a plea agreement. Green testified that she was introduced to Cervantes by two other members of the conspiracy, Charles Flute and Fernando Little Bird. At first, Green received her methamphetamine from Flute, but beginning in July or August 2002, she received it directly from Cervantes. Green received methamphetamine from Cervantes regularly from that time through the controlled buy in March 2003.

Flute also testified for the prosecution that Cervantes was his methamphetamine source, and that Cervantes often brought other people with him (though not Lopez) when he delivered methamphetamine to the Lower Brule Reservation. Flute testified that at some point, Cervantes instructed him to give some of the methamphetamine to Green. Flute also testified that Cervantes had once threatened him when he was short on his drug payment.

-3-

Green's testimony against Lopez revealed that on at least one occasion, Lopez was one of the people who came to collect money from Green, though Lopez never delivered drugs to Green. Green specifically recalled that Lopez was in her residence counting approximately $15,000 in cash that was to go to Cervantes for methamphetamine that Cervantes had previously given her. However, Green could not recall the date when this occurred. Flute testified that although he had dealt with Cervantes several times, he had never seen nor heard of Lopez.

The district court[2] denied the defendants' motions for judgment of acquittal, and the jury convicted Cervantes and Lopez on both counts. At Lopez's sentencing, the district court found that since Lopez's sentence was based on the quantity of drugs with which he was personally involved (rather than the conspiracy total), he was not entitled to a minor-role reduction as suggested by the pre-sentence investigation report (PSI). Also, the district court decided sua sponte that Lopez should receive a two-level enhancement for obstruction of justice because the court did not believe Lopez's trial testimony. As a result, Lopez received a sentence of 151 months, as opposed to the 120-month sentence suggested by the government and the PSI.

At Cervantes' sentencing, the district court enhanced the base offense level by two for obstruction of justice, because he made threats toward Green while awaiting trial. Cervantes was also assessed a two-level enhancement for possessing a firearm. Finally, Cervantes received a four-level enhancement for being a leader or organizer in the conspiracy. Based on his resulting offense level of 46, he was sentenced to life imprisonment.

On appeal, Lopez and Cervantes make numerous arguments. Lopez argues that there was insufficient evidence to convict on both counts, the district court erred

---

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

by not giving his preferred theory of defense instruction, and the prosecutor committed misconduct for comments made during closing argument. Lopez further argues that the district court misapplied the sentencing guidelines by not granting him a minor-role reduction and by sua sponte enhancing his sentence for obstruction of justice, in violation of Blakely v. Washington, 124 S. Ct. 2531 (2004) and the Sixth Amendment. Cervantes argues that there was reversible prosecutorial misconduct during closing argument, that the district court misapplied the guidelines in assessing him a four-level enhancement for his role in the offense, and that the district court improperly enhanced his sentence in violation of Blakely and the Sixth Amendment.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

We view the district court's denial of a motion for judgment of acquittal in the light most favorable to the verdict, and will reverse only if no reasonable jury could find the defendant guilty. United States v. Flores, 362 F.3d 1030, 1035 (8th Cir. 2004). Lopez challenges the sufficiency of the evidence to convict him of conspiracy. To convict an individual of conspiracy, the government must prove that the defendant was aware of an illegal conspiracy, and that he or she knowingly became a part of it. United States v. Beckman, 222 F.3d 512, 522 (8th Cir. 2000). Direct or circumstantial evidence may provide the basis of a conviction. Id. Once the government establishes the existence of a conspiracy, just slight evidence is required to link a defendant to the conspiracy, which places a heavy burden on a defendant challenging the sufficiency of the evidence in a conspiracy case. United States v. Jiminez-Perez, 238 F.3d 970, 973 (8th Cir. 2001). Of course, the evidence must be sufficient to meet the reasonable doubt standard. Id.

Lopez does not challenge the existence of a conspiracy. He asserts only that there was insufficient evidence to show that he was part of it. Green testified that

Lopez's only involvement in the conspiracy was that he once was at her house, though she couldn't say when, to collect a large cash payment that she owed to Cervantes for past drug shipments. Because Lopez lived on the west coast, he presumably drove a great distance to South Dakota to collect this cash payment. Flute, a member of the conspiracy, testified that he did not know and had never seen Lopez. And another prosecution witness, a jailhouse informant against Cervantes, testified on cross-examination that Cervantes told him Lopez had nothing to do with the drug dealing conspiracy. Though Lopez was undisputedly driving when the controlled buy took place, the controlled buy occurred three days outside of the conspiracy time frame.

We agree that the government's proof connecting Lopez to this conspiracy is razor thin. While that makes this a close call, we find that under our standard of review, a reasonable jury could have found that Lopez was a part of the conspiracy. Flores, 362 F.3d at 1035. Lopez collected a large sum of money from Green that she owed Cervantes for methamphetamine. A reasonable jury could infer that Lopez knew the reason for which he was collecting such a large amount of money. While this may be slight evidence, that is all that is required. Jiminez-Perez, 238 F.3d at 973. Accordingly, we find that Lopez's sufficiency challenge on this point falls short.[3]

Lopez also challenges the sufficiency of the evidence to convict him of possession with intent to distribute. This issue is an easier call. As previously noted, Lopez was driving the SUV during the controlled buy. Lopez insists that he was heading toward Chicago when he stopped for the controlled buy in South Dakota, that

---

[3]We also reject Lopez's argument that the government's conspiracy proof fails because it only proved that he personally handled less than 500 grams of methamphetamine, based on the amount of money that he collected at Green's residence. The government clearly proved that Cervantes, his co-conspirator, possessed and delivered over 500 grams of methamphetamine. United States v. Johnston, 353 F.3d 617, 624 (8th Cir. 2003), cert. denied, 541 U.S. 1068 (2004).

he had luggage in the vehicle for the Chicago trip, and that he only stopped in South Dakota to get gasoline. But law enforcement agents testified that after the controlled buy, Lopez and Cervantes entered Interstate 90 heading *west*, and that there was no luggage in the vehicle. The evidence also shows that Lopez needed to drive to an isolated area so that Cervantes could collect the drugs–presumably from the air breather of the SUV. This constitutes sufficient evidence to convict Lopez of possession with intent to deliver methamphetamine or aiding and abetting that same charge.

## B.    Theory of Defense Instruction

We review the district court's jury instructions for an abuse of discretion. United States v. Willis, 277 F.3d 1026, 1031 (8th Cir. 2002). Lopez argues that the district court erred in refusing to give his theory of defense instruction–primarily a "mere presence" instruction that referred to him by name and discussed the specific facts of this case. However, the district court did give a "mere presence" instruction which fairly and accurately stated applicable law. Lopez was not entitled to have his specific formulation of the instruction given. United States v. Tucker, 137 F.3d 1016, 1036 (8th Cir. 1998). We find no reversible error on this point.

## C.    Prosecutorial Misconduct

Whether the district court erred in refusing to declare a mistrial based on alleged prosecutorial misconduct during closing argument is also reviewed for an abuse of discretion. United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir. 1996). Both defendants complain about the prosecutor's closing remarks. The prosecutor stated in rebuttal argument that he was not putting justice up for sale by bringing in felons and thieves as witnesses. The defense objected, and the objection was overruled. We find that the district court properly overruled this objection because

the prosecutor was merely responding to arguments that one of the defense attorneys made in *his* closing argument.

Both defendants also contested a remark by the prosecutor that asked the jurors not to be fooled by "slick tactics." This time the district court sustained both defense counsels' objections, but refused to grant a mistrial. We find that as used here, the word "slick" alone does not render the trial unfair. See Cannon, 88 F.3d at 1502 (holding that the prosecutor's remarks must have been improper *and* that the remarks affected the defendant's substantial rights so as to deprive him of a fair trial). The prosecutor's use of the word "slick" to describe opposing counsel was improper, but the district court quickly remedied the matter by sustaining an objection. Even if the district court had failed to do so, the isolated use of this one word did not affect defendants' substantial rights so as to deprive them of a fair trial. Accordingly, we find no abuse of discretion.

## D.    Sentencing Issues

Lopez makes two different sentencing arguments. First, Lopez contends that the district court misapplied the guidelines when, contrary to the PSI recommendation, it declined to decrease his base offense two levels for being a minor participant in the conspiracy. Second, Lopez argues that he was sentenced in violation of his Sixth Amendment right to a jury trial, as announced in Blakely, because the district court assessed a two-level enhancement for obstruction of justice based upon its own factual findings rather than those of a jury. Similarly, Cervantes makes two primary sentencing arguments: 1) that the district court misapplied the guidelines by applying a four-level increase in his base offense level for being an organizer or leader; and 2) Blakely arguments based on the life sentence and both of the two-level increases for obstruction of justice and possession of a gun. During the pendency of this appeal, the Supreme Court decided United States v. Booker, 125 S.

Ct. 738 (2005), which applied the holding of <u>Blakely</u> to the federal Sentencing Guidelines. We deal with the misapplication arguments from both defendants first.

### 1.    Misapplication of the Guidelines

Lopez argues that the district court incorrectly applied the guidelines in denying him a minor-role reduction, because it concluded that it could not grant him the adjustment when he was being sentenced based on a quantity much less than the conspiracy total. A defendant may be eligible for the minor-role adjustment if his culpability is relatively minor compared to other participants, but the mere fact of lesser culpability does not entitle him to the reduction. <u>United States v. Johnson</u>, 408 F.3d 535, 538 (8th Cir. 2005). The district court's determination of whether a defendant was a minor participant will be reversed only if clearly erroneous. <u>United States v. Johnson</u>, 358 F.3d 1016, 1017 (8th Cir. 2004). This is unchanged by <u>Booker</u>, and we review the question of whether the district court correctly applied the guidelines de novo and its factual findings for clear error. <u>United States v. Mashek</u>, 406 F.3d 1012, 1017 (8th Cir. 2005).

In denying the adjustment, the district court stated,

> I question whether it was appropriate, here, to give Mr. Lopez the two-level reduction for his role in the offense. . . . However, he has been charged . . . with the 453.6 grams as a result of the evidence . . . that the defendant was counting out $15,000 at [Geneva Green's] residence. And, so, he has not, however, been charged . . . with the drug quantities as to the entire conspiracy which he was involved in with Mr. Cervantes. And it's my understanding of the case law that he is not entitled to a reduction for his role in the offense when he was not sentenced based upon the entire conspiracy, but only upon his own direct actions. . . . And, so, he can't have it both ways.

-9-

The district court cited United States v. Johnson, 358 F.3d 1016, for this proposition.

The district court correctly noted that Lopez's PSI only attributed 453.6 grams of methamphetamine to him under the conspiracy count because that is the approximate amount represented by the $15,000 that Lopez counted and collected at Green's house. The entire conspiracy amount that Cervantes was held responsible for was in excess of 34 pounds. In Johnson, we held that "[r]eduction for a defendant's role in an offense is not warranted when the defendant was not sentenced upon the entire conspiracy but only upon his own actions." 358 F.3d at 1018 (quotations omitted). Relying on Johnson, the district court found that Lopez was not entitled to a reduction for his role in the offense because he was not sentenced based upon the drug amounts attributable to the entire conspiracy, but only upon his direct actions–counting $15,000, which would amount to 453.6 grams of methamphetamine.

Lopez argues that this language from Johnson contradicts an application note to the Sentencing Guidelines which was amended in 2001 to clarify that a defendant who is held accountable only for the amount of drugs attributable to his involvement in the conspiracy is "not precluded" from receiving a minor-role adjustment. U.S.S.G. § 3B1.2, cmt. n.3.A.[4] But Lopez interprets the district court's comments on

---

[4]Lopez also argues that the language from Johnson is dicta, because the Johnson defendant was denied the reduction because of his major role in the offense, not because he was sentenced according to the amount of drugs he was personally responsible for. Even if the language in Johnson is dicta, the language from a case much more similar to Lopez's is not. In United States v. Speller, 356 F.3d 904 (8th Cir. 2004), the sole issue on appeal was whether the district court erred in denying the defendant a minor-role reduction. Although Speller pled guilty to conspiracy to distribute 50 or more grams of cocaine base and 500 or more grams of cocaine, her base offense level was set at 33, because she personally distributed only 50 grams of crack cocaine. Accordingly, the district court declined to give Speller the minor-role reduction. We affirmed, concluding that the district court did not err in denying the reduction, because under those circumstances, Speller would have been given a

-10-

this matter too narrowly. The district court found that Lopez was not "entitled to" the minor-role reduction in light of the drug quantity totals. The district court did not state that he was legally precluded from granting the adjustment, but that based on his view of our circuit's precedent, he would not give the adjustment under the circumstances of this case. We cannot conclude that the district court clearly erred in this determination. Although he was convicted of the same conspiracy as Cervantes, Lopez was held accountable for a much lower quantity of drugs. And although Johnson is not directly on point factually, the district court's decision is in line with our precedents. See United States v. Speller, 356 F.3d 904, 907 (8th Cir. 2004). Application note 3.A does not change this analysis. The note provides that a defendant in Lopez's position is not precluded from receiving the adjustment, but certainly does not suggest that he is *entitled* to it. Thus, the district court did not misapply the guidelines by denying Lopez a minor-role adjustment.

Cervantes argues that the district court erred by assessing him a four-level adjustment for being an organizer or leader of the conspiracy. Section 3B1.1 of the guidelines provides for a four-level increase in a defendant's offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The four-level role enhancement under section 3B1.1(a) derives from the defendant's decision-making authority, the type of defendant's participation in the offense, the nature and scope of the crime, and the degree of control or authority the defendant had over others. Id. at cmt. n.4. As with Lopez's appeal, we review the question of whether the district court correctly applied the guidelines de novo and its factual findings for clear error. Mashek, 406 F.3d at 1017.

Cervantes contends that the district court erred by not specifically analyzing the section 3B1.1 factors found in application note 4. Cervantes argues that the

"double reduction" to her base offense level. Id. at 907.

-11-

sentencing court did not address Cervantes' planning or organizing Flute's or Green's activities, and instead just focused on the fact that five or more participants were involved in the conspiracy. The court should treat such commentary as authoritative. United States v. Walterman, 343 F.3d 938, 941 n.3 (8th Cir. 2003). However, we can find no authority which requires the sentencing court to mechanically recite the factors from application note 4. Moreover, though the district court did not mention application note 4 at sentencing, we find it did implicitly consider those factors. When sentencing Cervantes, the district court referenced the evidence presented at trial–which indicated that Cervantes was in charge, that he controlled others (at times through threats) involved in the conspiracy, and that he supplied drugs to lower level dealers such as Flute and Green–when finding that the conspiracy was "extensive." Our review of the record indicates that the district court did not clearly err with this finding. United States v. Noe, No. 03-3878, 2005 WL 1353938, at *7 (8th Cir. June 9, 2005) (finding the four-level role enhancement appropriate when the defendant controlled others in the conspiracy and supplied drugs to lower level dealers). Accordingly, the district court did not misapply the guidelines in imposing the four-level enhancement.[5]

## 2. **Booker/Blakely Issues**

Lopez and Cervantes also maintain that they were sentenced in violation of their Sixth Amendment rights due to the enhancements assessed by the district court. Neither Lopez nor Cervantes raised Apprendi or Blakely claims in the district court or argued that the Sentencing Guidelines were unconstitutional. We therefore review their sentences for plain error. United States v. Pirani, 406 F.3d 543, 549-50 (8th Cir. 2005) (en banc). Before an appellate court can correct an error not raised at trial,

---

[5]Cervantes' brief could also be read to make Booker-type Sixth Amendment arguments about the role-in-the-offense enhancement, albeit without citation to Blakely or the Sixth Amendment. To the extent these are Booker/Blakely arguments, they, like the arguments in the next section, do not survive plain error analysis.

there must be plain error that affects substantial rights. When that occurs, an appellate court may then exercise its discretion to notice a forfeited error, if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. at 550. The burden is on Lopez and Cervantes to prove plain error. Id. "Appellate review under the plain-error doctrine, of course, is circumscribed and we exercise our power under Rule 52(b) sparingly." Jones v. United States, 527 U.S. 373, 389 (1999).

As in Pirani, the district court committed an error that was plain because it engaged in fact-finding under a mandatory Sentencing Guidelines scheme. Pirani, 406 F.3d at 550. To establish that this error affected their substantial rights, Lopez and Cervantes must demonstrate a reasonable probability that they would have received more favorable sentences without the Booker error, under an advisory guidelines scheme. Id. at 552.

Lopez cannot meet this heavy burden with regard to the two-level enhancement for obstruction of justice. Our review of the sentencing proceeding reveals no indication that, absent the Booker error, the district court would have sentenced Lopez to a lower sentence. And although the district court sentenced Lopez at the bottom of the applicable guidelines range, the record as a whole provides no basis for concluding that the district court would have imposed a lesser sentence under advisory guidelines. Id. at 553. In fact, the district court sua sponte increased Lopez's base offense level for obstruction of justice, contrary to the government's and the PSI's recommendations. On these facts, Lopez cannot demonstrate a reasonable probability that the district court would have sentenced him to a lower sentence under an advisory sentencing scheme. Accordingly, we affirm Lopez's sentence.

Similarly, Cervantes cannot establish that, absent the Booker error, there is a reasonable probability that he would have received a lesser sentence. When sentencing Cervantes to life imprisonment, the district court stated, "[a]nd this may

be a harsh sentence, I don't know, but Congress makes those determinations, I don't. And this defendant clearly has a lengthy criminal history." This statement is not enough to carry Cervantes' substantial burden to show that his substantial rights were affected by the Booker error. United States v. Hill, 410 F.3d 468, 473 (8th Cir. 2005) (finding no plain error even though the district court noted that it took no pleasure in giving a life sentence, but did not otherwise indicate that the life sentence was unwarranted or unfair). In fact, the district court's statement tends to indicate that it concurred in the harshness of the sentence because it mentioned Cervantes' extensive criminal history. Cervantes cannot show a reasonable probability that he would have received a lower sentence than life imprisonment had the district court used advisory guidelines. We affirm Cervantes' sentence.

## III.   CONCLUSION

We affirm the district court in all respects.

_____