# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2591

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Robert Stanford Johnson | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 11, 2008
Filed: June 12, 2008

_____

Before RILEY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Robert Stanford Johnson is before us for a second time, this time to challenge the denial of his motion to suppress evidence and convictions for possession of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(C), and possession of a firearm in furtherance of a drug crime, 18 U.S.C. § 924(c)(1)(A)(i). For the reasons given below, we affirm the decisions of the district court.[1]

_____

[1] The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

I.

On October 4, 2004, a citizen complained to the Des Moines, Iowa police department about suspected narcotics activity at an apartment on Ninth Street. The citizen reported a high volume of short-term traffic to the apartment and identified the occupants as Desseray Wright and Robert Johnson. Officers confirmed with the electric company that the utilities for the apartment were in Wright's name. Through a computerized search of law enforcement records, the police found a man named Robert Johnson who had an association with Wright. The program relied on data the department compiled from sources such as witness statements, arrested persons' contact information, and pawn shops. Using Johnson's birth date and Social Security number as given by the program, the officers learned that he had been convicted of a felony in 2001.

Knowing that heavy short-term traffic is consistent with narcotics sales, officers arranged for a confidential informant to purchase cocaine base ("crack") from the apartment. The informant purchased crack there, but from someone other than Wright or Johnson. Days later, an informant bought more crack from the apartment, this time identifying Wright as the seller and providing a physical description. As the officers conducted surveillance, they observed a man matching Johnson's description at the apartment.

Based on their investigation, the police obtained a warrant to search the Ninth Street apartment for drugs, money, weapons, and drug paraphernalia. Wright and Johnson's names were hand-written at the top of the warrant, to the left of the case number and above the document caption. The warrant did not otherwise refer to any individual. The police executed the warrant on October 21, 2004.

Johnson was asleep in the northeast corner bedroom when the police entered. Upon finding him, uniformed officers immediately detained Johnson and restrained

his hands in plastic zipper cuffs. The uniformed officers then left, and plain clothes officers came into the apartment. One of the plain clothes officers picked Johnson up off of the bed and put him up against the wall. The officer frisked him, then went into Johnson's pocket, pulling out a package and wallet. In the wallet was over $1,500 in cash; inside the package was 5.33 grams of crack. After Johnson was taken out of the room, the officers found a shoe box containing a loaded Taurus .38 caliber handgun on top of a dresser next to the bed and within reach of any person who was laying on the bed.

The officers questioned Johnson, then arrested him. A grand jury indicted him on four counts: (1) conspiracy to distribute more than five grams of cocaine base, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), 846; (2) possession with intent to distribute more than five grams of cocaine base, 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii); (3) possession of a firearm in furtherance of a drug crime, 18 U.S.C. § 924(c)(1)(A)(i); and (4) being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1).

## II.

Johnson moved to suppress the drugs and cash found in his pocket. The district court held a hearing on the motion in which Officer Chad Nicolino and Johnson testified. Nicolino recounted the investigation and the execution of the search warrant. He explained that the occupants of the home were detained before the officers began their search, both for safety reasons and to prevent evidence from being destroyed. He testified that because officers knew of Johnson's prior felony conviction, Johnson was subject to arrest based on the discovery of the gun next to the bed and could be searched as part of the booking procedures. Nicolino confirmed that the search warrant did not include a request to search Johnson, but listed him as a suspect.

Johnson described his detention, search, questioning, and arrest. The court found no meaningful conflict between Nicolino's and Johnson's versions of the events. The court orally denied the motion to suppress, first finding that the search warrant was supported by probable cause and that the officers could detain Johnson as an occupant of the residence under <u>Michigan v. Summers</u>, 452 U.S. 692 (1981). The court also found that the officers had knowledge of Johnson's prior felony conviction, and that there was probable cause to believe that he possessed the gun. Therefore, the court reasoned that the discovery of the drugs and cash was inevitable because they would have been found either during the initial frisk or after Johnson was arrested for possession of the gun.

The Government dismissed the conspiracy charge, and the case went to trial on the remaining three counts. Four police officers, a crime lab criminalist, and cooperating witness Desseray Wright testified on the Government's behalf. Officer Brian Mathis identified the crack and cash that he had removed from Johnson's pocket. Based on their training and experience, two officers testified that five grams of crack is not an amount that is normally intended for personal use, but rather connotes a distribution quantity. They said that the standard user amount is .2 to .5 grams, but allowed that a heavy user might take three to four grams per day. The criminalist confirmed that the substance found in Johnson's pocket was crack, that it weighed 5.33 grams, but that he did not test it for purity. The Government also introduced several small baggies and Johnson's identification card, which were found in the closet of the northeast bedroom. The officers also described the drugs, guns, and paraphernalia that were found elsewhere in the apartment.

Wright testified that she consumed five to ten grams of crack with Johnson nearly every other day. She acknowledged that the apartment was a drug distribution center, but said that Johnson did not sell drugs. In his defense, Johnson called an ex-girlfriend to testify that she suspected Johnson to be a drug user. Johnson's younger brother testified, claiming ownership of the handgun and stating that he (the brother)

placed the gun in the shoe box in the northeast bedroom. Johnson also testified on his own behalf. He said that he used 3.5 to 4 grams of crack on a daily basis, that he earned the cash from his work, that he never sold crack, and that he had never seen the gun found in the bedroom until after he was arrested.

The jury convicted Johnson on all three counts, but found that the Government did not prove beyond a reasonable doubt that Johnson intended to distribute at least five grams of cocaine base. Hence it convicted him of the lesser-included offense of possession of cocaine base with intent to distribute. Johnson moved for a judgment of acquittal and a new trial. The district court granted a judgment of acquittal as to the two firearm counts, and conditionally granted a new trial as to those counts in the event the acquittal was vacated or reversed. It denied the motion as to the possession with intent to distribute count, finding "abundant evidence" to support the jury's verdict. The Government appealed the district court's decision on the firearm counts. We reversed with instructions to reinstate the jury's verdicts on both firearm counts. United States v. Johnson, 474 F.3d 1044 (8th Cir. 2007).

On remand, the district court sentenced Johnson to a total 240 months of imprisonment. He now appeals the denial of his motion to suppress and his convictions for possession of cocaine base with intent to distribute and possession of a firearm in furtherance of a drug crime.

III.

We review for clear error the factual findings underlying a district court's denial of a motion to suppress. United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001). We review *de novo* its ultimate application of the law to those facts. Id. Johnson's challenge to the district court's decision has two parts. First, he argues that there was no probable cause to support the warrant to search the apartment. Second, he argues

that he should not have been detained or arrested when the police executed the search warrant. We affirm the district court's decision.

Probable cause exists for the issuance of a search warrant if, based on the totality of the circumstances set forth in the application and affidavits, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Here, the warrant application described two controlled buys of crack at the apartment, and one of the buyers identified Desseray Wright as the seller. Information from the electric company corroborated Wright's occupancy of the apartment. In addition, there was a great deal of short-term traffic to the apartment, consistent with narcotics trafficking. See United States v. Sumpter, 669 F.2d 1215, 1222 (8th Cir. 1982) (finding probable cause based on short-term traffic and allegations of two informants). Considering the circumstances, there was probable cause for the issuance of the search warrant.

Johnson disputes that there was probable cause to connect him to the alleged illegal activities at the residence. We do not understand the district court's ruling to be based on the assumption that the search warrant encompassed Johnson's person. Rather, the court ruled that the police were within their power to restrain Johnson while they executed the search and would have eventually discovered the crack in Johnson's pocket. This brings us to Johnson's second argument.

Michigan v. Summers recognizes that, consistent with Terry v. Ohio, 392 U.S. 1 (1968), a limited intrusion on a person's security is sometimes justified by substantial law enforcement interests such that it may be made on less than probable cause. Summers, 452 U.S. at 698-700. For example, the resident of a home subject to a search warrant may be detained so as to prevent flight, minimize the risk of harm to the officers, and allow the officers to conduct an orderly search. United States v. Wallace, 323 F.3d 1109, 1111 (8th Cir. 2003). Because a neutral magistrate has already found probable cause to search the home, there is naturally an articulable and

-6-

individualized suspicion of criminal activity that justifies the detention of the home's occupants. Summers, 452 U.S. at 703-04. In contrast, an articulable and individualized suspicion does not exist to search the patron of a public business during the execution of a search warrant. See Ybarra v. Illinois, 444 U.S. 85, 90-91 (1979).

Not only was Johnson an occupant of the apartment when the warrant was executed, he was individually identified in the search warrant application, known to be a felon, and had been seen at the apartment during a period of short-term traffic. Regardless of whether he was a temporary or permanent occupant of the apartment, the police had a reasonable and articulable suspicion that he was involved in criminal activity. As a result of this suspicion, the police had a right to employ the least intrusive means to detain him and investigate crime. See United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999) (applying Terry standard to a vehicle stop). In light of the dangerousness of the suspected drug trafficking, and the likelihood that Johnson had access to a weapon, it was reasonable for the police to restrain Johnson's hands. Muehler v. Mena, 544 U.S. 93, 100 (2005) (the "safety risk inherent in executing a search warrant for weapons was sufficient to justify the use of handcuffs"); Navarrete-Barron, 192 F.3d at 791.

As the district court found, even if the search of Johnson's pocket was not otherwise proper, the contents of his pocket would have inevitably been discovered. Because the police knew Johnson was a felon and saw a firearm within his reach, they had information sufficient to support the reasonable belief that Johnson was a felon in possession of a firearm. Thus, there was probable cause to arrest Johnson without a warrant. See United States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001). As Officer Nicolino testified, Johnson would have been searched incident to that arrest.

It follows that it was more probable than not that the evidence would have ultimately been discovered by lawful means in the absence of any alleged police misconduct. See Nix v. Williams, 467 U.S. 431, 444 (1984); see also United States

v. Thomas, No. 06-2452, 2008 U.S. App. LEXIS 9632, *11-*18 (8th Cir. May 5, 2008) (Colloton, J., concurring). By virtue of the execution of the search warrant, the police were pursuing a substantial alternative line of investigation that would have led to Johnson's arrest and incidental search. See Thomas, 2008 U.S. App. LEXIS 9632, at *6 (opinion of the court). Due to the inevitable discovery exception to the exclusionary rule, the district court correctly denied Johnson's motion to suppress the crack and cash that was found in his pocket.

IV.

We agree with the district court that there was abundant evidence to support Johnson's conviction for possession of cocaine base with intent to distribute. We observe a strict standard of review on questions of whether evidence is sufficient to support a conviction. United States v. Savatdy, 452 F.3d 974, 976 (8th Cir. 2006). We resolve all evidentiary conflicts in the Government's favor and accept all reasonable inferences from the evidence that support the jury's verdict. United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006). Only if no reasonable jury could have found Johnson guilty will we overturn the verdict. United States v. Bell, 477 F.3d 607, 613 (8th Cir. 2007).

The crack from Johnson's pocket was admitted into evidence, supported by expert confirmation that the substance was 5.33 grams of cocaine base. Experienced officers testified that five grams is far greater than what one would maintain for personal use. Combined with the cash in Johnson's pocket, the presence of a firearm, and the evidence of other drug dealing in the house, the jury had sufficient grounds to convict Johnson. Cf. Bell, 477 F.3d at 613 (affirming a conviction based on a similar quantity of evidence). The jury was free to disbelieve the testimony of Johnson's witnesses. See United States v. Evans, 220 F.3d 950, 953 (8th Cir. 2000). We affirm the conviction for possession with intent to distribute. We reaffirm

Johnson's conviction for possession of a firearm in furtherance of a drug trafficking offense.  See Johnson, 474 F.3d at 1050.

V.

We affirm the decisions of the district court in all respects.

_____