# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3891

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　*　　Appeal from the United States
　　v.　　　　　　　　　　　　　*　　District Court for the
　　　　　　　　　　　　　　　　*　　Eastern District of Arkansas.
Debra Jean Price,　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　Appellant.　　　　　　*

_____

Submitted: June 11, 2008
Filed:  September 15, 2008

_____

Before SMITH and GRUENDER, Circuit Judges, and ROSENBAUM,[1] District
　　　Judge.

_____

SMITH, Circuit Judge.

Debra Jean Price was convicted, following a jury trial, of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. The district court[2] sentenced her to 15

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, presided over Price's jury trial, and the Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of

months' imprisonment, followed by three years of supervised release. The court also ordered her to pay $202,215.75 in restitution and imposed a $100 special assessment. Price appeals, arguing that the district court: (1) erred in denying her motion for a judgment of acquittal; (2) improperly refused to order disclosure of certain statements in the possession of the Federal Bureau of Investigation (FBI); (3) erred in failing to give her a minor role adjustment; and (4) imposed an unreasonable sentence. We affirm.

## I. *Background*

Quality Homes was a mobile home dealership owned by Debbie Cossitt with four locations throughout Arkansas. Price worked for Quality Homes as the manager of its lot in Harrison, Arkansas. Price, Cossitt, and several other Quality Homes employees routinely misrepresented the qualifications of borrowers to mortgage lenders in order to facilitate financing for its mobile home sales. In this scheme, the participants deceived potential lenders by providing fraudulent documents—including W-2s, bank records, and check stubs—to improperly inflate the borrowers' creditworthiness. When these lenders called to verify the borrowers' financial information, Quality Homes would also provide false information to them, often reading from a prepared sheet. Price personally organized several of these fraudulent audit calls, and on at least one occasion, she directed an employee to provide fraudulent documents to submit to a potential lender.

Price was indicted, along with Cossitt and another employee, Shannon Hill, for conspiracy to commit wire fraud. The government presented several witnesses who testified as to Price's involvement in the wire fraud scheme. Vivien Sanford, the manager of the Batesville, Arkansas lot, testified that she overheard Price and Cossitt discussing the ease with which the lenders could be fooled using the fraudulent documents. Matthew Seibert, a salesperson for Quality Homes in Searcy, Arkansas,

Arkansas, conducted Price's sentencing proceedings.

testified that he would occasionally consult with Price before submitting fraudulent documents to the potential lenders. Seibert also testified that Price was aware that the documents were fraudulent and that Price would examine the documents to make sure they looked "legal" and accurately reflected the fraudulent numbers that had been represented to the lenders. Trish Bulkeley, an employee at the Harrison lot, testified that Price ordered her to provide fraudulent bank statements on one occasion. She also testified that Price would arrange false audit calls.

During the trial, Price requested copies of all government witnesses' memoranda of interview ("FBI 302s"). Price argued that a portion of Seibert's trial testimony had not been included in the FBI 302, and this omission should be brought out on cross-examination. The court examined the FBI 302 concerning the agent's meeting with Seibert to see if the document was discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963). After an in camera review of the document, the district court ordered that the government produce Seibert's 302 under *Brady* because the statement could be used to impeach Seibert with respect to his testimony concerning Price. The court, however, refused to order production of the remaining FBI 302s, finding that these documents were not discoverable under the Jencks Act, because they were not the prior statements of a witness.[3]

Price testified in her own defense, denying any involvement with the scheme. At the close of the government's case, Price moved for a judgment of acquittal, but the district court denied her motion. The jury found Price guilty of conspiracy to commit wire fraud.

At sentencing, the district court found Price's Guidelines sentencing range to be 27 to 33 months. The court, however, varied downward to achieve sentencing

---

[3]The court did not rule whether the remaining FBI 302s contained material that was discoverable under *Brady*.

parity with the other two defendants in the case.[4] Ultimately, the court imposed a sentence of 15 months' imprisonment, followed by three years of supervised release and ordered Price to pay a $100 special assessment and $202,215.75 in restitution.

## II. *Discussion*

In this appeal, Price challenges both her conviction and the sentence imposed, arguing that: (1) the evidence introduced at trial was insufficient to convict her of conspiracy; (2) the district court erroneously refused to order the government to disclose certain witness statements; (3) the district court erred in failing to give her a minor role adjustment; and (4) her sentence is unreasonable.

## A. *Sufficiency of the Evidence*

Price challenges the sufficiency of the evidence; she contends that the government did not offer any evidence to prove that she knowingly joined and participated in the conspiracy. In reviewing the sufficiency of the evidence, "[w]e resolve all evidentiary conflicts in the Government's favor and accept all reasonable inferences from the evidence that support the jury's verdict." *United States v. Johnson*, 528 F.3d 575, 580 (8th Cir. 2008). Further, we will overturn the verdict only if no reasonable jury could have found Price guilty. *Id.*

To convict Price of conspiracy to commit wire fraud, the government had to prove, beyond a reasonable doubt, that: (1) a conspiracy with an illegal purpose existed; (2) Price knew of the conspiracy; and (3) Price knowingly joined and participated in the conspiracy. *United States v. Munoz*, 324 F.3d 987, 990 (8th Cir. 2003). Mere knowledge of a criminal conspiracy is insufficient. *Id.* at 991. Price does

---

[4]Hill and Cossitt pleaded guilty a few days into Price's trial. Hill was sentenced to a three-year term of probation and was ordered to pay a $100 special assessment and $120,000 in restitution. Cossitt was sentenced to a term of 30 months' imprisonment, followed by three years of supervised release and was ordered to pay a $200 special assessment and $129,560 in restitution.

not challenge that a conspiracy existed and that she was aware of its existence. At issue is whether sufficient evidence was presented to prove that Price knowingly joined and participated in this loan fraud conspiracy. We conclude that the record contains sufficient evidence that Price both knowingly joined the conspiracy and was an active participant in it.

In support of her sufficiency of the evidence argument, Price cites *United States v. Casperson*, 773 F.2d 216 (8th Cir. 1985). In *Casperson*, we reversed the conviction of a defendant, concluding that "[t]he evidence of [the defendant's] activities falls short of demonstrating the knowing, affirmative cooperation necessary to sustain a conviction for conspiracy." *Id*. at 221. The conspiracy in *Casperson* was a fraudulent investment scheme, and the defendant's responsibilities only included taking notes at meetings and keeping track of potential investors. *Id*. at 220. There was no indication that the defendant had knowledge of the scheme and, on at least one occasion, he advised a couple not to invest, given their reservations. *Id*. Unlike the defendant in *Casperson*, however, Price's knowledge of and involvement with this criminal conspiracy is borne out by the trial record. Specifically, Price ordered an employee to provide fraudulent documents to lenders, and she directed other employees to provide false information on audit calls. Coupled with Price's knowledge of the conspiracy, this evidence sufficiently shows Price's knowledge and participation in the conspiracy. We, therefore, affirm the district court's denial of Price's motion for a judgment of acquittal.

## B. *Discovery of the FBI 302s*

Price next argues that the district court erred in refusing to review the FBI 302s to determine whether they contained witness statements that are subject to disclosure under the Jencks Act. We review the district court's refusal to conduct an in camera inspection of the FBI 302s for an abuse of discretion. *United States v. Duval*, 496 F.3d 64, 72 (1st Cir. 2007).

"By the Jencks Act, after a government witness has testified, the court, upon motion of the defendant, shall order the government to produce any statement of the witness that relates to the subject matter of the testimony and is in the government's possession." *United States v. Sturdivant*, 513 F.3d 795, 803 (8th Cir. 2008) (citing 18 U.S.C. § 3500(b)). The Jencks Act defines a "statement" as:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;

> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e). Although an in camera inspection is not required in every case, "a Government objection to production may require that the trial court inspect documents or hold a hearing to gather extrinsic evidence bearing on the extent to which the documents are statements producible under [§] 3500." *Goldberg v. United States*, 425 U.S. 94, 108 (1976). Before an in camera inspection is required, Price must make a "colorable claim" that the documents that she seeks are statements within the meaning of the Jencks Act. *See United States v. Willis*, 997 F.2d 407, 413–14 (8th Cir. 1993) (holding that the district court did not err in refusing to conduct an in camera inspection where the defendant "failed to raise a colorable claim that the FBI 302s that he [sought were] 'statements' for purposes of the Jencks Act").

We conclude that the district court did not abuse its discretion in refusing to conduct an in camera inspection of the FBI 302s. The FBI 302s are notes of witness interviews that were transcribed by an FBI agent and not by the witnesses. The mere fact that the witnesses did not prepare the documents, however, is not dispositive of

our Jencks Act inquiry; we must also consider whether any of the witnesses adopted or approved the notes. *Kane v. United States*, 431 F.2d 172, 174 (8th Cir. 1970) (holding that an FBI agent's notes were not a "witness statement" within the act because there was no evidence that the witness adopted or approved what was recorded); *see also* 18 U.S.C. § 3500(b)(1) (defining a "statement" as "a written statement made by said witness and signed *or otherwise adopted or approved by him*") (emphasis added). In raising her claim, Price relies upon § 3500(e)(2); however, she offered no evidence that any of the witnesses approved or adopted the information that was in the FBI 302s. Absent such evidence, these documents are not discoverable under this section of the Jencks Act. *See United States v. Madrigal*, 152 F.3d 777, 782 (8th Cir. 1998) (affirming the district court's refusal to conduct an in camera inspection where the defendant failed to provide a "basis for his belief that the notes contain 'statements' as defined in the Jencks Act"). Because Price failed to raise a colorable Jencks Act claim, we hold that the district court did not err in refusing to conduct an in camera inspection.

### C. *Minor Role Adjustment*

Price also challenges the district court's calculation of her advisory Guidelines sentence. She argues that the district court erred because it refused to grant her a minor role adjustment. We disagree and affirm.

We review the district court's refusal to grant a minor role adjustment for clear error. *United States v. Lopez*, 414 F.3d 954, 961 (8th Cir. 2005). "A defendant may be eligible for the minor-role adjustment if [her] culpability is relatively minor compared to other participants, but the mere fact of lesser culpability does not entitle [her] to the reduction." *Id*. We hold that the district court did not clearly err here because Price's role was not relatively minor compared to the other participants. Price was a Quality Homes supervisor, and in this capacity, she directed at least one employee to provide fraudulent documents to a lender and often made arrangements for employees to deceive the lenders with false information on the lenders' audit calls.

D. *Reasonableness of Sentence*

Finally, Price argues that her sentence is unreasonable. She contends that her case warrants a greater downward variance based on her personal characteristics—namely her history of family problems and evidence that she overcame these problems. These personal characteristics, however, do not compel a reversal of Price's sentence.

"We review a challenge to the reasonableness of a sentence for abuse of discretion." *United States v. Starr*, ---F.3d---, 2008 WL 2485178, *14 (8th Cir. June 23, 2008) (citation and punctuation omitted). We presume that a sentence within the Guidelines range is reasonable. *Id*. This presumption, however, may be rebutted by reference to the statutory sentencing factors found in 18 U.S.C. § 3553(a). *Id*. Price, however, did not receive a Guidelines sentence but a sentence varying below her Guidelines range by twelve months. The only evidence that Price offers in support of her argument that her below-Guidelines sentence is unreasonable is her past history of family problems. The district court considered this evidence but found that it was not sufficiently compelling to warrant a greater variance, and we conclude that the district court acted within its discretion in determining the extent of the variance. *See United States v. Austad*, 519 F.3d 431, 434 (8th Cir. 2008) (recognizing that while our reasonableness review may take into consideration the extent of the district court's deviation from the Guidelines range, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.") (quoting *Gall v. United States*, 128 S. Ct. 586, 597 (2007)).

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____