# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3832

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Michael Shropshire, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: June 8, 2009
Filed: August 14, 2009

_____

Before SMITH and SHEPHERD, Circuit Judges, and LIMBAUGH, District Judge.[1]

_____

PER CURIAM.

Michael Shropshire pleaded guilty to one count of conspiring to distribute oxycodone, in violation of 21 U.S.C. § 846. The district court[2] sentenced Shropshire to 48 months' imprisonment. Shropshire appeals, asserting that the district court imposed an unreasonable sentence because the nature and circumstances of the offense and his history and characteristics favor a lower sentence. We affirm.

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## I. *Background*

Shropshire was indicted by a federal grand jury and charged with conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846. After Shropshire entered his guilty plea, the United States Probation Office prepared a presentence investigation report (PSR).[3] Shropshire filed objections to the PSR, contesting the drug quantity calculation and arguing that he should receive a minor role adjustment.

The district court held an evidentiary hearing at which the government presented the testimony of Investigator William Lambert of the Nebraska State Patrol and Jerry Holley. Investigator Lambert, who was in charge of the investigation, testified about Holley and Shropshire's involvement in the distribution of oxycodone. In June 2004, law enforcement began investigating Holley and his distribution and possession of oxycodone. Holley was arrested as a result of this investigation, was federally indicted, and pleaded guilty to conspiracy to distribute oxycodone. He cooperated with law enforcement after his arrest.

According to Investigator Lambert, prior to Holley's arrest, law enforcement had conducted approximately 14 trash pulls of garbage at Holley's residence. Officers recovered numerous prescription pill bottles, receipts from pharmacies, and index cards from these trash pulls. Holley testified that he was acquiring oxycodone tablets from a number of individuals and then reselling these tablets to others. He identified the index cards taken from his trash as notations that he made of who he received oxycodone pills from and the number of pills that he received.

Using the index cards, Holley identified Roger Bearfield, Shropshire's cousin, as one of his oxycodone suppliers. Holley's association with Bearfield and Shropshire

---

[3]Shropshire initially entered a plea of not guilty to the indictment, but he subsequently withdrew this plea and entered a guilty plea.

began when Holley started purchasing 40-milligram oxycodone tablets from Shropshire. Holley would pick up Shropshire and drive him to a certain location where Shropshire would then exit the vehicle, walk to an unknown location, and return with 100 tablets of 40-milligram oxycodone tablets that he would sell to Holley. This scenario occurred at least four times, with Shropshire progressively charging Holley more on each occasion. After the fourth incident, Holley discovered that the source of the oxycodone tablets was Bearfield. As a result, Holley began purchasing the oxycodone tablets directly from Bearfield and cut Shropshire out as the middleman for the deals.

At the evidentiary hearing, the government introduced into evidence Shropshire's statement made after his arrest in which Shropshire admitted to setting up at least three deals between Holley and Bearfield.

At the conclusion of evidence, the district court found that the quantity of oxycodone involved in the four transactions between Shropshire and Holley was 100 tablets of 40-milligram strength oxycodone. This amount converted to 107.2 kilograms of marijuana under the Guidelines. The district court also overruled Shropshire's objection to the PSR that he should receive a minor role adjustment. The district court ultimately determined that Shropshire's Guidelines range was 57 to 71 months' imprisonment.

The district court then departed downward from the Guidelines range, sentencing Shropshire to 48 months' imprisonment, stating:

> I'm required to consider a number of things under the statutes and I'll go ahead and list them.
>
> I'm required to consider, under 18 U.S.C. Section 3553(a), the seriousness of the offense, the need to promote respect for the law, to provide for just punishment, to afford adequate deterrence, to protect the

-3-

public, to provide needed educational and vocational training, medical care or other correctional treatment, and I'm taking into account the nature of the offense, the defendant's criminal history and characteristics, sentences available, the advisory sentencing guideline range, the defendant's acceptance of responsibility, and the plea agreement.

Mr. Shropshire does have a fairly extensive and fairly serious criminal background. I do appreciate the fact that he has been working. His work history is very sporadic and that's not surprising when someone has had a problem with drug addictions.

Some of the folks that I sentenced in connection with this general conspiracy have little or no criminal history. Some of these defendants were people who had serious medical issues that caused them to be in pain and they had obtained the prescriptions either legitimately or initially legitimately and then, because of their need or desire for money, ended up selling some of their medications to Mr. Holley.

And there's no doubt Mr. Holley is not someone who deserves our sympathy. He helped a lot of people get into a lot of trouble. And Mr. Shropshire was one of those people.

Mr. Shropshire's situation, again, is a little bit different in that he brokered a transaction as opposed to simply selling his own pills and for some reason I find the brokering of a transaction to reflect a little bit more culpability.

But even considering all of those—those factors, and the statutory factors, I do think that a guideline sentence is simply more than is actually needed to fulfill all of the goals and objectives of the criminal justice system.

There's no doubt that this defendant, Mr. Shropshire, could make use of some more opportunities for rehabilitation. He has learned a trade, and I appreciate the fact that he's been trying to make good use of that trade.

He's somebody who has taken many years to learn some of the hard lessons that we hope to learn early in life and instead he's learning them late in life.

Having said all of that, it is my job to try to determine what a reasonable sentence is. I do give great deference to the guidelines. I have great respect for the way that they're formulated and the purpose behind them, but I will deviate somewhat from the guideline range.

I will impose a sentence of 48 months' incarceration to be followed by three years of supervised release.

## II. *Discussion*

On appeal, Shropshire argues that the district court imposed an unreasonable sentence because the nature and circumstances of the offense and his history and characteristics favor a lower sentence. According to Shropshire, concerns for just punishment and deterrence can adequately be addressed by a lesser penalty. Shropshire maintains that the district court improperly weighed the § 3553(a) factors, resulting in a sentence that is greater than necessary to meet the federal sentencing goals.

"We review a challenge to the reasonableness of a sentence for abuse of discretion." *United States v. Price*, 542 F.3d 617, 622 (8th Cir. 2008) (internal quotations and citation omitted). A sentence within the Guidelines range is presumed reasonable, but such presumption "may be rebutted by reference to the statutory sentencing factors found in 18 U.S.C. § 3553(a)." *Id.*

Here, Shropshire "did not receive a Guidelines sentence *but a sentence varying below [his] Guidelines range* by [nine] months." *Id.* (emphasis added). Shropshire argues that his below-Guidelines sentence of 48 months' imprisonment is unreasonable because (1) although he does have an extensive criminal history, in the months following his arrest he has demonstrated his ability to turn his life around and

maintain steady employment; (2) his role in the conspiracy was minimal when compared to others who were involved; and (3) his unique combination of characteristics indicate that a lower sentence would be "sufficient, but not greater than necessary" to achieve federal sentencing goals. The record reflects that the district court considered these arguments "but found that [they] w[ere] not sufficiently compelling to warrant a greater variance, and we conclude that the district court acted within its discretion in determining the extent of the variance." *Id.*

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____